WINFREE v. COCA-COLA BOTTLING WORKS.—103 S. W. (2d) 33.

Middle Section. January 2, 1937.

Petition for Certiorari denied by Supreme Court, March 27, 1937.

616

Walter S. Faulkner, Frank McMillan, and Allison Humphreys, Jr., all of Lebanon, for plaintiff in error, Winfree.

Trabue, Hume & Armistead, of Nashville, and W. B. Williams and Louis Chambers, both of Lebanon, for defendant in error Coca Cola Bottling Works.

CROWNOVER, J. This is an action brought against the dedefendant Coca-Cola Bottling Works to recover for an injury to an eye, which the plaintiff, Winfree, alleges was caused by the negligence of the defendant in overcharging a bottle of Coca-Cola with carbonic acid gas which resulted in an explosion.

The declaration contained two counts. The first charged that the carbonic acid gas forced into the bottle of Coca-Cola was explosive and the defendant company was negligent in overcharging the bottle with such gas, which caused said explosion. The second count averred that the defendant knew that carbonic acid gas was explosive and dangerous and that an overcharge of same would cause an explosion, but. in spite of that, it negligently overcharged said bottle, which caused it to explode.

The defendant pleaded not guilty.

The case was tried by the judge and a jury. At the close of the plaintiff's evidence, and again at the conclusion of all the evidence, the defendant moved the court for peremptory instructions in its

favor, which motions were overruled. The jury returned a verdict in favor of the defendant and judgment was entered dismissing the plaintiff's action.

The plaintiff's motion for a new trial having been overruled, he appealed in error to this court and has assigned errors, which are, in substance, as follows:

(1) There is no evidence to sustain the verdict.

(2) The trial judge erred in twice charging the jury on the contributory negligence of the plaintiff, which emphasized that fact.

(3) The trial judge erred in excluding testimony in regard to the finding of a brass ring in a bottle of Coca-Cola.

(4) The court erred in refusing to charge the plaintiff's special request as to notice to the defendant company that the bottles were being too heavily charged.

(5) The verdict was the result of passion, prejudice, and caprice on the part of the jury as clearly appears upon the face of the verdict when compared with the undisputed evidence in the case.

This case was before us last year and we reversed and remanded it for a new trial. Winfree v. Coca-Cola Bottling Works, 19 Tenn. App., 144, 83 S. W. (2d), 903. The case was tried again in the lower court and is now again before us for determination.

Freeman Winfree, thirty-two years of age, was, in October, 1933, employed as a clerk and meat cutter in a retail grocery store in Lebanon, Tenn. Behind the counter from which he sold meat was a refrigerator in which was kept meat, bottled Coca-Cola, etc.

All the Coca-Cola sold in the grocery store was purchased from the defendant, the Coca-Cola Bottling Works, of Lebanon, Tenn.

On October 19, 1933, Winfree went into the refrigerator to get some bacon. It was behind two crates of Coca-Cola. One crate of bottles was full,. containing twenty-four bottles, and the other crate was about half full. In order to reach the bacon it was necessary for him to move the two crates, one of which was on top of the other. He caught the handhold of the bottom crate and gently moved the two crates eight or ten inches. The bottles did not strike each other in moving. While he was moving them a bottle of Coca-Cola in the top crate, the partly filled crate, exploded, and a piece of the glass of the bottle was thrown into his right eye, permanently injuring it.

The Coca-Cola had been in the refrigerator a day or two, and the temperature of the refrigerator was kept at 34 to 36 degrees.

Occasionally a customer would go into the refrigerator to look at meat or something, but he was generally accompanied by a clerk.

Other cases of Coca-Cola were placed outside of the refrigerater and by the side of it, behind the counter, and customers sometimes went behind the counter, but there was usually a clerk present.

1. The plaintiff contends that there is no evidence to support

the verdict; that there is no other reasonable explanation of this explosion except that the bottle was overcharged and put on the market.

We think there is no doubt about the liability of a company that overcharges the contents of a bottle, and knowingly or recklessly puts it on the market, and injury results from an explosion. Winfree v. Coca-Cola Bottling Works, 19 Tenn. App., 144, 83 S. W. (2d), 903; Dail v. Taylor, 151 N. C., 284, 66 S. E., 135, 28 L. R. A. (N. S.), 949; Watson v. Augusta Brewing Co., 124 Ga., 121, 52 S. E., 152, 1 L. R. A. (N. S.), 1178, 110 Am. St. Rep., 157; O'Neill v. James, 138 Mich., 567, 101 N. W., 828, 68 L. R. A., 342, 110 Am. St. Rep., 321, 5 Ann. Cas. 177; Weiser v. Holzman, 33 Wash., 87, 73 P., 797, 799, 99 Am. St. Rep., 932; Colyar v. Little Rock Bottling Works, 114 Ark., 140, 169 S. W., 810.

We are also of the opinion that: "Evidence of the explosion to the injury of the purchaser of a bottle of carbonated beverage, accompanied by evidence that other bottles put up by the same bottler had exploded during the several preceding months, is sufficient to carry to the jury the question of the latter's negligence, in an action to hold him liable for the injury." Dail v. Taylor, supra. We held this in our former opinion in this case when it was first before us, that is, evidence of the defendant's knowledge of other explosions was sufficient to carry the question of negligence to the jury. We did not hold that such evidence was conclusive, but, like any other material evidence, it should be considered by the jury and be weighed with other facts and circumstances by the jury in arriving at its verdict.

The jury returned a verdict for the defendant company. Now, was there any material evidence to support the verdict? We think there is, and that we are bound by the verdict.

The manager of the company at Nashville testified that the defendant company purchased its empty bottles from well-recognized and modern glass plants and that a Coca-Cola bottle will stand 600 pounds of pressure; that the pressure used in the Lebanon plant was 32 pounds, which was the amount generally used in bottling Coca-Cola; that soda fountain pressure runs from 90 to 120 pounds; that pressure in a Coca-Cola bottle becomes lower when the bottle is cool and rises when the temperature increases. But he admitted they used Coca-Cola bottles from any source.

The local manager described how the Coca-Cola was bottled and inspected. He testified that he had been with the Lebanon plant since 1927 and said that the defendant had a modern bottling machine and that all bottles were inspected to discover any cracks or chips. He said that the pressure used in 1933, when this accident occurred, was 32 pounds, and it was the same pressure that the company had used all along and was using at the present time; that the pressure was regulated by a gauge which was inspected every

day; that the gauge was set by hand and at no time exceeded 32 pounds, and it could not be increased unless some one went to the gauge and turned it. Mr. Winns had a pressure-gauge machine which he brought to court with him and demonstrated before the jury the pressure that a Coca-Cola bottle would stand. He explained to the jury that experiments that he had made at the plant in changing the temperature and increasing the pressure, none of which resulted in an explosion. He said that the pressure machine in use by the company when this case was tried was the same machine which was in use in 1933, but there was a difference in the filling apparatus, but that did not have anything to do with the pressure.

The employee who operated the pressure gauge at the defendant's plant testified that he had been working for the defendant company about seventeen years; that he was a bottler; that in October, 1933, and before that time, and ever since that time, the company had been using only 32 pounds of pressure, and that he set the gauge every morning; and that at no time did the pressure exceed that amount. He said that the same pressure gauge was in use in 1933 as was in use at the time of the trial, and that it hadn't been changed; that all bottles were inspected before they were filled, and if any bottle had a crack in it or a broken place it was thrown away. He further testified that he always worked close to the pressure gauge, and from time to time watched it during the day; that at no time did it exceed the pressure of 32 pounds; that the reason he had to set it from time to time was because the gas would sometimes get low; that he set it every morning when they started the plant and at night turned the gauge down and cut the gas off.

Hence the defendant's evidence is to the effect that it was using only that amount of pressure adopted by up-to-date modern bottling plants; that 32 pounds pressure in a Coca-Cola bottle is not sufficient to cause it to explode; that the defendant had modern machinery and inspected all bottles from well-recognized manufacturers.

It was not admitted that the bottle in question came from the defendant's plant; but it was proven that the store purchased all of its bottled Coca-Cola from the defendant, and the jury could well have inferred that the bottle did come from the defendant's plant.

There was evidence that at times customers passed down the passageway where the Coca-Cola was left in cases; but there is no evidence that any evil-minded person had planted that particular bottle in one of those cases.

It was incumbent upon the plaintiff to show by a preponderance of the evidence that the defendant was negligent. He introduced evidence in an effort to establish negligence, but the jury did not see fit to accept his version of the case, but on the contrary found that he defendant was not guilty of negligence, and there is material evidence to support the verdict. We are bound by the jury's verdict.

Continental Ins. Co. v. Schulman, 140 Tenn., 481, 205 S. W., 315; Hines v. Partridge, 144 Tenn., 219, 231 S. W., 16; Washer, etc.. v. Balton & Son, 4 Tenn. App., 67.

2. It is insisted that the court twice charged on the contributory negligence of the plaintiff, which emphasized that fact, when there was no evidence in the record to warrant a charge on contributory negligence. It is true that the court charged on contributory negligence in the first part of his charge, in explaining the defendant's theory of the case, and said if the plaintiff was guilty of contributory negligence he could not recover, and then again, after he had finished his charge, on the request of the defendant he gave the following request in charge to the jury:

"If you find that the plaintiff negligently handled the case of coca-cola, and that such negligence in any way proximately contributed to the accident, then your verdict must be in favor of the defendant."

This request, of itself, would be confusing and misleading to the jury, but we think that the court correctly stated the defendant's theory on contributory negligence of the plaintiff and then explained away any uncertainty when he used the following language in his main charge about contributory negligence:

"If he didn't know it, that it was dangerous and likely to explode and likely to injure him, as it is said it did injure him, in view of the fact that it is uncontroverted, I think, in the proof that it was expected by the manufacturers of coca-cola that it be handled in substantially the way that the plaintiff did handle it, his conduct in that respect would not constitute contributory negligence."

We think the jury understood the charge on this subject.

3. The court correctly excluded the testimony about the brass ring being found in a bottle of Coca-Cola. The negligence averred in this case was the overcharging of the bottle with gas, not failing to inspect the bottles before filling.

4. The court was not in error in refusing to charge the plaintiff's special request as to notice to the company of the bottles being too heavily charged, as he had sufficiently charged on this subject in his main charge.

5. We are of the opinion that the verdict was not the result of passion. prejudice, or caprice on the part of the jury. It was just a question of whether the jury would believe the plaintiff's contention or that of the defendant, and it saw proper to accept the defendant's evidence, and we are bound by the verdict.

All the assignments of errors being overruled, it results that the judgment of the lower court is affirmed. The costs of the cause including the costs of the appeal are adjudged against the plaintiff, Freeman Winfree.

Faw, P. J., and DeWitt, J., concur.