WATSON *v.* BORG-WARNER CORPORATION *et al.*

(*Nashville,* December Term, 1949.)

Opinion filed March 17, 1950.

John R. Gilliland, Emmett W. Braden, Walter P. Armstrong, Jr., of Memphis, for petitioner, and Canale, Glankler, Boone, Little & Loch and Armstrong, McCadden, Allen, Braden & Goodman, all of Memphis, of counsel.

James E. Blount, Jr., and Harold R. Ratcliff, both of Memphis, for defendants.

Mr. Justice Gailor delivered the opinion of the Court.

This is an action in negligence under the common law, for damages for personal injuries, filed in the Circuit Court of Shelby County, by Ella May Watson as plaintiff, against Borg-Warner Corporation and the Shell Oil Company as defendants.

The following are the essential facts developed by the plaintiff's proof: During May 1948, plaintiff was employed by Borg-Warner Corporation at its Memphis Plant as a machine operator, and for the proper operation of the machine, it was necessary that oil flow through the

machine in such a way that the hands and arms of the operator came in contact with the oil during the operation. On or about May 26, 1948, Borg-Warner introduced a new kind of oil to be used in the machine, and purchased this new oil from the Shell Oil Company, Inc. About a day and a half after the new oil was put into use, plaintiff noticed an eruption of the skin on her hands, and reported the fact to her foreman. She continued to operate the machine and to come in contact with the oil for another week, during which time the rash grew steadily worse. She then reported to the nurse at the Borg-Warner Plant, and was examined and given medicine by the nurse. On the nurse's instruction, she reported to Dr. Everett and to Dr. Howard, both Company Doctors, who gave her further medical treatment. Despite the treatment, the diseased condition of the skin continued, and on instruction of the nurse, plaintiff was sent to a hospital in Memphis, where she remained from June 15 to July 1, 1948.

During her hospitalization, the symptoms of plaintiff's disease were, according to lay witnesses, a rash, swelling, exudation of an oily substance through the skin, with blisters and stripping off of the skin.

Also, while plaintiff was in the hospital, a representative of the Maryland Casualty Company, the compensation insurance carrier for Borg-Warner Corporation, visited her and gave her a check for $20, the amount of weekly compensation for temporary total disability due her under the Tennessee Workmen's Compensation Act, Code, Section 6878. Subsequently, she received further checks from the Insurance Company for $60. These checks are exhibits to plaintiff's testimony, and she admits receiving and cashing checks in the total amount of

$80, representing compensation for four weeks' disability at the rate of $20 per week. She also had her medical and hospital bills paid by her employer or the compensation carrier.

These are the essential facts brought out by the plaintiff's evidence at the trial. Though plaintiff, during her disability, had at various times been examined and treated by four doctors, she introduced no expert testimony, whatever. No medical definition of the disease nor its probable cause, was in evidence. No chemist or doctor was called to analyze the oil or to give expert opinion that from the known chemical components of the oil, a disease of the skin such as that suffered by the plaintiff might, could or would have resulted. Except for the objective symptoms of a skin disease, as we have stated them, there is absolutely no proof what the disease was,—whether it was a "skin disease" simpliciter or whether the objective symptoms visible on the skin surface, were manifestations of an internal disease or disability.

At the end of the plaintiff's proof, both defendants made motions for a directed verdict. The Trial Judge, recognizing that there had been no medical nor expert proof of what the disease was, nor its probable cause, undertook, with the help of a definition from Webster's dictionary, to make a diagnosis himself. He found that the plaintiff was suffering from "dermatitis"; the plaintiff's form of dermatitis was an occupational disease and compensable under the Workmen's Compensation Act as it was in force at the time of the occurrence, Section 1, Chapter 197, Public Acts of 1947; that plaintiff, by accepting the $80 from the Insurance Carrier of her employer, lost her common-law right of action, not only

against her employer, Borg-Warner, but also against the codefendant, Shell Oil Company. Doubtless, in so holding, the Trial Judge was actuated by rules of law made in the following cases: *Bristol Tel. Co.* v. *Weaver,* 146 Tenn. 511, 243 S. W. 299; *Mitchell* v. *Usilton,* 146 Tenn. 419, 242 S. W. 648; *Hammett* v. *Vogue, Inc.,* 179 Tenn. 284, 165 S. W. (2d) 577; *Wilson* v. *City of Chattanooga,* 179 Tenn. 234, 165 S. W. (2d) 373. Accordingly, the Trial Judge directed a verdict for both defendants, and he later overruled motion for a new trial.

The plaintiff perfected her appeal to the Court of Appeals. That Court, holding that the Trial Judge was not competent to make the diagnosis, and that the burden was on defendants to show that plaintiff was suffering from, and disabled by a disease compensable under the Workmen's Compensation Act, Code, Section 6851 et seq., reversed and remanded the case for a new trial.

Defendants have filed petition for certiorari, which we have granted. We have concluded that the action of the Court of Appeals was erroneous. Plaintiff declared in negligence under common-law rules, against the defendants. To make a prima facie case and justify submission of the issues to a jury, it was incumbent on the plaintiff to make prima facie proof of the fact that the disease from which she suffered was caused by some act or omission of the defendants, and that such act or omission was negligence under the circumstances.

Giving the plaintiff's evidence all possible weight and the advantage of all reasonable inferences, short of speculation and surmise, she proved only that (1) she had operated the machine for some considerable time without disability, (2) that shortly after the Shell Oil Company furnished and Borg-Warner filled the ma-

chine with a new kind of oil, plaintiff developed a disease of the skin, and so suffered the disability for which she sued. There is no competent testimony or prima facie proof, either of the nature and medical definition of the disease or of its probable cause. In fact, the plaintiff proved nothing except that she noticed the eruption on her skin after the change of oil. The isolated fact that one event occurs after another is not by itself sufficient to warrant an inference that the event which is first in time is the cause of the latter.

"The question of causation will not get to the jury at all, unless the Judge thinks that 12 men can reasonably find that Defendant's tort was, at the moment of the happening of the damage, a continuing efficient cause of the damage and *not a mere antecedent fact.*" Jeremiah Smith, Legal Cause in Actions of Tort, 25 Harvard Law Review, p. 303, citing Bishop, Non-Contract Laws, Sec. 4441. (Emphasis supplied.)

As we view it, the technical medical name of plaintiff's disease was not an essential of plaintiff's proof, but proof that plaintiff's disease was of such character that it could or would probably, in the light of medical clinical experience, be caused by contact with an oil having the chemical components of the oil actually used, was an essential and a missing element of plaintiff's proof. Some further proof that the defendants had known, or negligently failed to inquire about the dangerous property of the oil, would also have been necessary to render them liable to plaintiff. There must be proof that the defendants reasonably should have foreseen the "possibility of harm". Prosser—Torts, p. 177.

Further, there was no prima facie case made that the skin eruption from which plaintiff suffered was caused

rather by contact with the oil, than by some bacteria, germ or fungus with which the defendants had nothing to do, and for which they were in no wise responsible. There is no showing that "but for", Prosser on Torts, Ch. 8, p. 322, her contact with the oil, plaintiff would not have developed her skin disease. Admitting that the Trial Judge exceeded his authority in making a diagnosis, we think it would be equally improper for the jury to be permitted to make a diagnosis, and so supply an essential element of plaintiff's proof. Cf. *DuPont Rayon Co.* v. *Robertson,* 12 Tenn. App. 261.

 The mere fact that an employee is injured by an appliance raises no presumption that the employer was negligent in furnishing the appliance. It is presumed that the employer did his duty, and when the plaintiff sues in an action which depends for its success upon proof of the employer's negligence, the burden is on the plaintiff to show negligence as an essential part of his case. *Railroad Co.* v. *Lindamood,* 111 Tenn. 457, 462 and 472, 78 S. W. 99, 100. The following quotation from wood on the Law of Master and Servant, Section 382, which is quoted and approved in *Railroad Co.* v. *Lindamood, supra,* is pertinent here: " 'The servant seeking recovery for an injury takes the burden upon himself of establishing negligence on the part of the master, and due care on his own part. And he is met by two presumptions, both of which he must overcome in order to entitle him to recovery: First, that the master has discharged his duty to him, by providing suitable instrumentalities for his business, and in keeping them in condition; and this involves proof of something more than the mere fact that the injury resulted from a defect in the machinery. It imposes upon him the burden of showing that the

master had notice of the defect, or, in the exercise of that ordinary care which he is bound to observe, he would have known it. When this is established he is met by another presumption, the force of which must be overcome by him, and that is that he assumed all the usual and ordinary hazards.' . . .''

There is no proof, whatever, that in changing to the new oil, defendants knew or should have known of any chemical properties of the oil which might injure the plaintiff. Therefore, the presumption that defendants exercised due care for plaintiff's safety in the selection of the oil, repels a possible inference that defendants were negligent in the selection of the oil. It is positively shown by Barron, a witness for plaintiff, that immediately after the defendants had notice of plaintiff's skin eruption, the new oil was used no longer. That fact does not justify any inference that *before* plaintiff's skin eruption, defendants had failed to exercise care for plaintiff's health and safety, nor does the fact that at the same time and after plaintiff's skin eruption, other employees were also affected by the use of the oil. If there was any evidence that *prior* to plaintiff's disability, other employees had been affected by use of the oil and the defendants had notice of the fact, *Winfree* v. *Coca-Cola Bottling Co.*, 20 Tenn. App. 615, 103 S. W. (2d) 33, there would be some ground for inference that defendants had failed to exercise reasonable care for plaintiff by not changing the oil, but there is no line of such evidence. The reason for the change of oil was that the new oil had properties which would speed up the cutting of the metal parts which were being manufactured, but whatever may have given the oil its cutting property, there

is nothing to show that the property was or was likely to be injurious to human skin and hands.

What we have said applies also to the evidence that *after* plaintiff's disability was brought to the notice of the defendants, they had the oil chemically analyzed and refused to give plaintiff a copy of the analysis. We are not called on to determine whether defendants were obliged to furnish plaintiff a copy of the analysis, but viewing the evidence in the light most favorable to the plaintiff, as it is pertinent to the present inquiry, the analysis could only have shown that the defendants were informed of the dangerous nature of the oil *after the event.*

"In the case at bar, the cause of the plaintiff's skin affliction on the evidence remains a matter of doubt and conjecture. It may be that she was allergic to the dress shield or one or more of its component parts, but that cannot be known, her physician informs us, until an intradermal test is made. It is, of course, possible that the shields contained deleterious and harmful chemicals or substances, but they were not analyzed and, if such be the fact, it has not been here established. We cannot resort to a choice of possibilities. That is guesswork and not decision." *Ross v. Porteous, Mitchell & Braun Co.,* 136 Me. 118, 3 A. (2d) 650, 653.

From the foregoing authorities, we conclude that the burden was not on the defendants to establish that the plaintiff's action was under the Workmen's Compensation Act, and not under the common law, until after the plaintiff, who had sued in negligence under the common law, had made out a prima facie case of liability upon the principles of law relied on in the declaration. We agree with the Court of Appeals that the Trial Judge

committed error in undertaking a diagnosis of the plaintiff's skin disease, but since he reached the correct result, though by an erroneous route, we may affirm his judgment. *Greenlaw* v. *Louisville & N. Railroad Co.*, 114 Tenn. 187, 86 S. W. 1072; *Jones* v. *Cherokee Iron Co.*, 82 Tenn. 157; *Gregory* v. *Underhill, Newson & Co.*, 74 Tenn. 207.

Since we have disposed of the case on other grounds, it is unnecessary to discuss the question whether, by the acceptance of the checks for compensation from the Insurance Company, plaintiff had elected to rely on the Workmen's Compensation Act, and so to waive her right of action at common law. We expressly reserve judgment on that point.

It results that the judgment of the Court of Appeals is reversed, and that of the Trial Court is affirmed.

All concur.