36 F.3d 1098
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Walter WHITFIELD, Plaintiff-Appellant,
v.
BIC CORPORATION and Societe Bic, Defendants-Appellees
 No. 93-1626.
 United States Court of Appeals, Sixth Circuit.
 Sept. 21, 1994.
 
 Before: MERRITT, Chief Judge; MILBURN and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a product liability suit in diversity, governed by Michigan law.[1] Plaintiff Walter Whitfield sued defendants Bic Corporation of the United States and Societe Bic of France under theories of negligence and breach of implied warranty for injuries allegedly caused by his BIC lighter. The district court granted summary judgment to both defendants, finding that Whitfield had not made a prima facie showing as to either defendant's connection to the lighter. Because we find that there remain genuine issues of material fact as to one defendant, we remand for further proceedings in accordance with this opinion as to that defendant but we affirm as to the other defendant.
 
 I.
 
 2
 Whitfield suffered serious burns at a bar in Detroit, Michigan on December 11, 1989. He alleges that he lit a cigarette with a BIC lighter he had recently purchased at a local drug store; that he released the lighter mechanism and placed the lighter in the left breast pocket of his flannel shirt; and that a few seconds later the lighter re-ignited, setting his shirt on fire and burning him. The lighter was a full-size "Mod-II" disposable adjustable-flame butane cigarette lighter, bearing the BIC logo and trademark as well as the stamp "Made in Spain." All parties agree that the lighter was manufactured by Laforest Bic, S.A. ("BicSpain"), a Spanish corporation which is not a defendant in this case.
 
 
 3
 On June 20, 1991, Whitfield, a resident of Michigan, brought this suit in diversity under Michigan's product liability statute,[2] naming as defendants Bic Corporation, a New York corporation headquartered in Connecticut ("BicAmerica"), and Societe Bic, S.A., a French corporation headquartered in Clichy, France ("BicFrance"). Whitfield served BicFrance with process under the provisions of the Hague Convention.[3] Although he admits that the defendants suggested to him that BicSpain was the proper defendant, Whitfield did not name BicSpain as a party defendant because of the difficulty of serving process in a country he believed was not a signatory to the Hague Convention. (In fact, Spain became a party to the Hague Convention on June 4, 1987.)
 
 
 4
 To present a prima facie case under the Michigan products liability statute, a plaintiff must present evidence
 
 
 5
 . of a defect;
 
 
 6
 . of a causal connection between the defect and the injury; and
 
 
 7
 . that the defect was attributable to the defendant(s).
 
 
 8
 Gates v. Volkswagenwerk Aktiengesellschaft, 333 N.W.2d 34, 38 (Mich.App.1982); Holloway v. GMC, 250 N.W.2d 736, 737-38 (Mich.1977); Kupkowski v. Avis Ford, Inc., 235 N.W.2d 324, 328 (Mich.1975); Caldwell v. Fox, 231 N.W.2d 46, 50-51 (Mich.1975); Piercefield v. Remington Arms Co., 133 N.W.2d 129, 135 (Mich.1965). Both BicAmerica and BicFrance filed motions for summary judgment on the ground that they were the wrong party defendants, asserting that there was no demonstrable connection between them and the manufacture or sale of the lighter in question. The district court permitted limited discovery as to this issue only, and on April 25, 1993, granted the motions for summary judgment.
 
 II.
 
 9
 Whitfield asserts four theories for why BicFrance is a proper party defendant: (1) it controls BicSpain; (2) it succeeded to the liability of Flaminaire, another French company which designed a lighter known as the "Mod-I"; (3) it licensed the Flaminaire lighter design to BicSpain; and (4) it controls BicAmerica and its use of the BIC trademark.
 
 
 10
 Control of BicSpain. Whitfield argues that BicFrance is liable for BicSpain's manufacture of the lighter in question because BicFrance owns 67% of the stock of BicSpain. The district court is correct that neither majority stock ownership nor the sharing of directors and officers confers liability on the parent:
 
 
 11
 In order to establish a cause of action because a subsidiary is a mere instrumentality of its parent, the following must be proved: (1) control by the parent to such a degree that the subsidiary has become its mere instrumentality; (2) fraud or wrong by the parent through its subsidiary; and (3) unjust loss or injury to the claimant.
 
 
 12
 Maki v. Copper Range Co., 328 N.W.2d 430, 433 (Mich.1982). BicFrance and BicSpain have only one common director and officer (Marcel Bich, BicFrance's founder[4]), their books are separate, and no showing has been made that BicFrance fraudulently hides behind these corporate arrangements. Nor has Whitfield shown such actual control by the parent BicFrance that the subsidiary BicSpain has become a mere instrumentality. Nor can Whitfield claim "unjust loss or injury" because he has not shown that BicSpain is undercapitalized or in some way judgment-proof. Furthermore, as the district court pointed out, BicFrance only owned 30% of BicSpain's stock at the time of the injury, acquiring the remaining 37% in March 1990; even if ownership alone could as a matter of law raise a presumption of control it is therefore not clear that the facts of this case would support such a presumption. We therefore agree with the district court that Whitfield has not made a prima facie case for piercing the corporate veil as between BicFrance and BicSpain.
 
 
 13
 Successor Liability. In 1970, BicFrance purchased 100% of the assets of Flaminaire, a French company which had designed a full-size disposable adjustable-flame butane lighter known as the "Mod-I." Flaminaire ceased all operations at that point, and as part of this purchase BicFrance obtained the rights to the Mod-I lighter design. For Whitfield to prevail on a theory of successor liability he must show that Flaminaire would have been liable and that Flaminaire was merged into BicFrance in such a way that BicFrance assumed Flaminaire's liabilities. Pelc v. Bendix Machine Tool Corp., 314 N.W.2d 614, 618 (Mich.App.1981); Turner v. Bituminous Casualty Co., 244 N.W.2d 873, 879, 883-84 (Mich.1976). The district court dismissed this theory on the general ground that Whitfield had failed to connect the defective lighter to BicFrance. We need not grapple further with this question because any argument which would support this theory also supports a theory of BicFrance's direct liability for licensing the design to BicSpain. If Whitfield can show that the Mod-II lighter in question was manufactured according to the Flaminaire design (at least in relevant degree), then BicFrance is liable as the owner and licensor to the extent that the design can be shown to have caused Whitfield's injury (see discussion below). The extra step of successor liability adds nothing because such liability is an issue where the defective product was manufactured (or the defective design licensed) by the seller corporation before it was bought by and merged into the buyer corporation. Then the question is whether the buyer corporation has assumed responsibility for a product or design already in the stream of commerce. In the instant case, however, it was BicFrance and not Flaminaire which owned the design and licensed it to BicSpain.
 
 
 14
 Licensing. The Michigan product liability statute permits a suit "brought for ... injury to person ... caused by or resulting from the ... design ... of a product or a component of a product." Mich.Comp.Laws Ann. 600.2945. BicFrance licensed the Flaminaire design to BicSpain;[5] the design was for a full-size, disposable, adjustable-flame butane lighter known as the Mod-I; and there is a question of fact as to what relationship the full-size, disposable, adjustable-flame butane Mod-II lighter at issue in this case bears to the Mod-I. None of the parties to this lawsuit have given the court sufficient explanation of the relation between these two lighter designs. While Whitfield asserts without evidence that the Mod-II is based on the Mod-I design, BicFrance asserts without evidence that the Mod-II is unrelated to the Mod-I and that it had no role in any modifications which BicSpain may have performed on the Mod-I design licensed to it by BicFrance. Neither of these parties attempts to explain how the two lighters are either similar or different. In addition, although BicFrance admits that it licensed the Mod-I design to BicSpain, it does not say what the terms of the Mod-I license were.
 
 
 15
 Although Michigan's law of corporations protects BicFrance from liability based merely on its majority ownership of its Spanish subsidiary (and probably its American as well), it is obvious that the relationship among the three is not arm's length. This tangle is part of our difficulty in addressing the relationship between the Mod-I and Mod-II lighters. For example, BicAmerica manufactured the Mod-I lighter from 1974 to 1977 and also manufactured the Mod-II lighter from 1976 to 1989. Joint Appendix at 152. BicAmerica says that it took the Mod-I (Flaminaire) design over from BicFrance and made it "its own."[6] Since 1989, however, it has purchased Mod-II lighters made in France. We are left with too many questions: are the Spanish, American, and French Mod-II lighters identical in design? if so, do they descend from the Mod-I? to what degree? according to whose re-design? if not, how do they differ from each other and who is responsible for the design of the Spanish version? BicFrance refers in its brief to
 
 
 16
 evidence presented by [BicAmerica] ... that the original Flaminaire design has been changed over the years.... The design changes were not made by [BicFrance]. The original Flaminaire design was described as a Mod-I, while the lighter involved in this case is what is described as a Mod-II lighter. That Mod-II lighter has been modified and redesigned by parties other than Flaminaire and [BicFrance].
 
 
 17
 BicFrance Brief at 16-17. Statements such as these are the sort of mere denials which do not defeat plaintiff's allegations for the purpose of summary judgment but instead raise questions of fact making the case unsuitable for termination at the summary judgment stage. A defendant moving for summary judgment cannot sustain his or her burden merely by denying the allegations in the nonmoving plaintiff's pleadings. McKinney v. Dole, 765 F.2d 1129, 1135 (D.C.Cir.1985); 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d Sec. 2727 at 131 & n. 11 (2d ed. 1983 & 1994 Supp.). Moreover, in one of its interrogatory answers BicFrance appears to admit that the Flaminaire design was the Mod-II design:
 
 
 18
 [QUESTION]: Who designed the full size adjustable disposable lighter which bears the Bic trade name and logo, and which ... has been distributed in the United States as the "Mod II adjustable" lighter?
 
 
 19
 RESPONSE: Flaminaire, S.A., a French corporation.
 
 
 20
 Joint Appendix at 136. In sum, we believe that the relation of the BicSpain lighter to the Flaminaire design owned by BicFrance is simply too open a question to be closed on summary judgment, and we therefore remand on this theory for further proceedings.
 
 
 21
 Control of BicAmerica. BicFrance also owns just under 63% of the shares of BicAmerica, which is the exclusive owner in the United States of the BIC trademark and logo. BicFrance founder Marcel Bich and his son Bruno are directors and officers of both companies.[7] Bruno Bich is Chairman and Chief Executive Officer of BicAmerica. By the terms of a voting trust, Marcel Bich may vote all BicAmerica shares held by BicFrance, as well as by himself and his son Francois, with sole power, when he is in the United States, thus giving him singlehanded control of any shareholder vote.[8] Whitfield argues that these facts add up to BicFrance's control of BicAmerica and its use of the BIC trademark and therefore to BicFrance's liability for BicAmerica's distribution of the lighter. Whitfield also correctly argues that a trademark licensor may be held liable for an injury caused by a product bearing that trademark if the licensor exercised sufficient control over the manufacturing, packing, or distribution of the product. See Kosters v. Seven-Up Co., 595 F.2d 347, 351-53 & n. 10 (6th Cir.1979). As the district court did not directly address either of these two theories of vicarious liability, however, we remand them for consideration below.
 
 III.
 
 22
 Whitfield's theory as to the liability of BicAmerica is: that he bought the lighter in the United States; that BicAmerica has exclusive ownership of the BIC name and trademark in the United States; that these facts create a rebuttable presumption that BicAmerica distributed the lighter in question; and that BicAmerica has not come forward with sufficient evidence to rebut that presumption. Whitfield asserts that BicAmerica's failure to sue any other entity for violating its exclusive trademark in the United States by selling the lighter in question supports the presumption that BicAmerica in fact distributed that lighter.
 
 
 23
 BicAmerica denies that any such presumption operates in this case and also asserts that it neither manufactures the Mod-II lighter itself nor buys any such lighter from BicSpain, the manufacturer of the lighter in question. BicAmerica does admit: that it formerly manufactured the Mod-II lighter, from 1976 to 1989, but that all such lighters bore the stamp "Made in U.S.A."; that the Mod-II lighters it has distributed since were manufactured in France and bear the stamp "Made in France"; and that the only lighter it buys from BicSpain is the "J-5" nonadjustable mini-lighter. BicAmerica produced numerous shipping receipts which seem to indicate purchases of "J-5" lighters from BicSpain.
 
 
 24
 BicAmerica has no duty either to defend its exclusive trademark through litigation or to accept responsibility for products distributed in the United States in violation of that trademark. BicAmerica filed affidavits in the record to show that it neither designed nor manufactured the lighter at issue; and that it did not buy, import or distribute the lighter. It further stated that it had not authorized any company to distribute full-size adjustable lighters of Spanish manufacture in the United States. This evidence was not refuted by the plaintiff. Rather, he relied upon the authority in Winfree v. Coca-Cola Bottling Works, 103 S.W.2d 33, 35 (Tenn.Ct.App.1937). In that case, although there was no direct evidence that the product, a soft-drink bottle, came from the defendant's plant, nevertheless the proof was that the store where the bottle exploded bought all of its Coca-Cola from the defendant. Therefore, it was reasonable to infer the bottle came from the defendant's plant. Whitfield suggests that a similar inference can be drawn here, although he has not shown that BicAmerica distributed lighters to the drug store in Detroit where this lighter was purchased.
 
 
 25
 Instead, as this is a diversity case applying Michigan law, the controlling case is Gates v. Volkswagenwek Aktiengesellschaft, 333 N.W.2d 34, 39 (Mich.Ct.App.1982), which held that where the plaintiff produced no evidence linking the product to a particular manufacturer, the plaintiff could not recover against that manufacturer. Therefore, the decision of the district court in granting summary judgment on behalf of BicAmerica is AFFIRMED.
 
 IV.
 
 26
 Whitfield moved to be allowed to amend his complaint to add a theory of "concert of action." The trial court denied this motion as futile, given that such a claim requires a showing of liability in both of the concerting defendants and that the court had already found that Whitfield had not demonstrated any real question of such liability. Even though we reverse the district court as to each of the two defendants, we affirm the district court as to this "concert" issue because we do not see that Whitfield has come forward with any evidence or even allegation sufficient to demonstrate that BicFrance and BicAmerica acted in concert. In Michigan, a plaintiff offering a theory of concert of action must show "that all defendants acted tortiously pursuant to a common design." Abel v. Eli Lilly & Co., 343 N.W.2d 164, 176 (Mich.1984); Cousineau v. Ford Motor Co., 363 N.W.2d 721, 728 (Mich.App.1985). In the instant case, if BicFrance is liable for Whitfield's injuries it is because it licensed a faulty design to the manufacturer of the lighter which burned him. If BicAmerica is liable for those injuries it is because it distributed the lighter which burned him. Between these two actions stands BicSpain, the manufacturer of the lighter, and no evidence is before us which would make the connection between the design and the distribution close enough for a reasonable jury to find a common scheme.
 
 
 27
 * * *
 
 
 28
 For the reasons set forth above, we AFFIRM the district court's denial of leave to plaintiff to amend his complaint and the district court's orders granting summary judgment as to defendant BicAmerica but reverse and REMAND to the district court as to BicFrance for further proceedings in accordance with this opinion.
 
 
 
 [1]
 The parties do not raise a choice of law issue. The district court found that "[u]nder the lex fori approach adopted in Olmstead v. Anderson, 428 Mich. 1, 400 N.W.2d 292 (1987), Michigan law applies to tort actions, absent a rational reason to displace it with the law of a foreign jurisdiction." Opinion and Order at 9 n. 2
 A federal court sitting in diversity must apply the choice of law rules of the forum state, Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487 (1942), and this circuit has applied the Olmstead lex fori presumption in the products liability context. Mahne v. Ford Motor Company, 900 F.2d 83 (1990). Accordingly, Michigan law applies.
 
 
 [2]
 According to Michigan law, a products liability action is "an action based upon any legal or equitable theory of liability brought for or on account of death or injury to person or property caused by or resulting from the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of a product or a component of a product." Mich.Comp.Laws Ann. 600.2945 (emphasis added)
 
 
 [3]
 Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, done at The Hague, Nov. 15, 1965, entered into force, Feb. 10, 1969, 20 U.S.T. 361, 658 U.N.T.S. 163. The United States was an original party
 
 
 [4]
 In its interrogatory responses, Societe Bic answered "No" to the question, "Does [sic] Societe Bic, S.A., and the Spanish company 'Laforest, S.A.,' have any common directors, officers, or other key employees?" Joint Appendix at 144. The district court found that they "do not share common directors, officers or key employees." Opinion and Order at 3. In its "Statement of Undisputed Facts in Support of the Pending Summary Judgment Motions," however, Societe Bic states that "the only officer or director of Societe Bic, S.A. which has participated in the management of Laforest, S.A. is Mr. Marcel Bich. He became a member of the board of directors on June 10, 1974 and became vice pres[id]ent on July 23, 1986." Joint Appendix at 112
 
 
 [5]
 The following is drawn from Societe Bic's interrogatory answers:
 QUESTION: [Did you] ever authorize[ ] anyone else to use the [Flaminaire] design[?]
 RESPONSE: Societe Bic, S.A., has authorized Laforest Bic, S.A. to manufacture full size adjustable lighters according to the design.
 Joint Appendix at 137.
 
 
 [6]
 "The BIC lighter with adjustable flame was originally designed by Flaminaire[.] ... [BicAmerica] has, however, adopted and approved the design as if it were its own." Joint Appendix at 152
 
 
 [7]
 As near as this court can tell, Marcel Bich is an officer and director of both Societe Bic and Bic Corporation, and Bruno Bich is an officer and director of Bic Corporation and a director of Societe Bic. See Joint Appendix at 136, 150. According to Bic Corporation's 1991 Annual Report, Bruno Bich was Chairman and Chief Executive Officer. Joint Appendix at 161
 
 
 [8]
 Societe Bic owns just under 63% of Bic Corporation shares. From the record before us we do not know how many shares Marcel and Francois Bich own, but clearly Marcel commands a controlling block of shares