CAROL BUNDY, Plaintiff, *v.* EY-TEB, INC., MARGORIE BENNETT and MAE LONGLEY, Doing Business as POWDER BOX BEAUTY SHOPPE, Defendants.*

City Court of New York, Trial Term, Kings County, December 23, 1935.

*Joseph R. Miller,* for the plaintiff.

*Carl Schaeffer* [*Howard Sheldon* of counsel], for the defendant Ey-Teb, Inc.

*Herbert Cole,* for the defendants Bennett and Longley.

RUSSELL, J. Plaintiff suffered painful and serious injury as a result of the application to her eyes of a preparation designed to darken eyebrows or lashes and put on the market for such purpose by defendant corporation.

The plaintiff sufficiently connected her injuries with the application of the preparation. It was developed that the operator at the beauty parlor applied the liquids from bottles bearing labels, marks

---

* Affd. by the Appellate Term, Second Dept. March 27, 1936; leave to appeal to Appellate Division denied by Appellate Term April 18, 1936; leave to appeal to Appellate Division denied by Appellate Division, 248 App. Div. 596.

and directions of the defendant company, and that when applied the beautifiers were in the original containers and had not been tampered with. It was also established that the operator applied the preparation only in accordance with the printed directions contained upon the bottles. Whether they were bought by the beauty parlor from a jobber or directly from defendant cannot affect the outcome provided they were sold, received and kept in their original condition and containers, which the court so finds.

At the close of the trial the plaintiff consented to a dismissal as to the defendants, the beauty shop and its operator.

It is undisputed that this preparation contained as active ingredients silver nitrate, ammonia and pyrogallic acid. Plaintiff's chemist testified to analysis of this preparation from bottles having their source from the beauty shop, and its representative testified such bottles were either the identical ones used upon plaintiff's face or else like bottles purchased at the same time. The chemist testified that the proportions of the above named ingredients as found upon his analysis were poisonous, harmful and dangerous for external use about the human face and especially in or about the eye. When he sought to state results obtained from other samples of this preparation bought upon the market, defendant corporation objected and the evidence was ruled out — the containers varying in size and shape from those for trade use as used by the beauty parlor. The chemist for the manufacturer defendant testified to the presence of the named drugs, but claimed a percentage to such a degree as to be harmless for the use for which prepared and sold. This presented a question of fact for the court.

The label annexed to the container reads: " Non-Toxic Safe Lasting Ey-Tec contains no paraphenylenediamine, no aniline derivatives, *no poisonous metals.* It complies with all pure food and drug regulations. It requires no predisposition test. Ey-tec may even be dropped into the eyes without harm, and may be used with absolute safety. Ey-tec a product of Ey-Teb Co. — 425 Fifth Ave." It is testified that the substance of this reading matter was brought to attention of plaintiff prior to its application and that she relied upon the facts thus stated. (Italics mine.)

It was in evidence that the preparation as analyzed did contain harmful ingredients such as might cause a harmful dermatitis, especially the drugs heretofore named in percentages dangerous for such use. Defendant also claimed to have sold a quantity of such preparation without knowledge heretofore of harmful result and to have tested this formula about and in the eyes of animals with no harmful results.

A line of decisions dating from *Thomas* v. *Winchester* (6 N. Y. 397) indicates the duty and form of liability in this class of action. In *Karr* v. *Inecto* (247 N. Y. 360), Judge LEHMAN, in the opinion (at p. 363) says: " Before the plaintiff may recover she must show, *first*, that the injury to the finger resulted from contact with the chemical product manufactured by the defendant; *second*, that the chemical product was inherently dangerous and poisonous; and *third*, that the defendant was negligent in putting upon the market a dangerous and poisonous product." Again (quoting from same page): " If the evidence establishes that the liquid contained in the bottles of dye used by the plaintiff was dangerous and poisonous, then from the fact that the injury followed contact with the dye we might draw the inference that the injury was the result of that contact. In such case, too, we might without further evidence as to how these particular bottles happened to contain a dangerous and poisonous liquid infer that such a condition could not have arisen without fault on the part of employes of the defendant."

It seems to this court that all the elements mentioned in the opinion in the *Karr* case are here present and that the same inference is warranted.

The plaintiff has suffered somewhat severely as a result of the application of defendant's dye. I find decision in her favor in the sum of $2,000. Judgment to enter accordingly. Ten and thirty days' stay to defendant with appropriate exceptions.