SAFEWAY STORES, Inc., v. FULLER.

No. 30088.   Oct. 28, 1941.

*118 P. 2d 649.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, and Darnell & Gibson, of Clinton, for plaintiff in error.

Mitchell & Mitchell, of Clinton, for defendant in error.

GIBSON, J. This is an action to recover damages for personal injuries allegedly sustained as a result of eating unwholesome or poisoned food purchased by plaintiff at defendant's store. Verdict and judgment were for plaintiff, and defendant appeals.

Plaintiff alleged that in the forenoon of May 10, 1937, she purchased a pound

of sausage at defendant's store, and on the same day she and her husband and grandson ate a portion thereof at the noon meal; that within two hours she became violently ill, suffering physical pain, etc., which has resulted in certain permanent physical disability, and that the sausage aforesaid, by reason of its tainted and unwholesome quality, was the direct cause of such illness.

Plaintiff testified that she purchased the sausage at defendant's store at 11 a. m., and cooked half of it for the noon meal on the same day; that it smelled like it had medicine in it; she ate two small cakes; her grandson ate two and her husband one; that in addition to the sausage they ate sausage gravy, butter, honey, cheese, and hot biscuits; for breakfast that day they had eaten oatmeal, sweet milk, butter, biscuits, coffee, and honey; that she became sick about 2 p. m., and between 6 and 7 p. m. commenced vomiting and was ill all night; her husband and grandson were also ill; that she remained sick, and on June 15th went to bed as a result; her nerves were affected and she could not walk; she lost the sight of one eye. By September, 1939, she says she lost 45 pounds in weight; that her doctor called her ailment neuritis or arthritis; she was in a hospital for a while; that on advice of the doctors she had all her teeth extracted; that the arthritis started in her hands and moved to other parts of her body; she had not suffered from rheumatism before eating the sausage.

Dr. T. A. Boyd, a physician and surgeon, called for plaintiff, testified that he was not acquainted with plaintiff; that food could become poisoned through putrification or from treatment with a chemical; eating such food might produce acute cases of gastric upset, cause vomiting, blindness, and upset the nervous system; it could cause permanent blindness; such food could cause toxic infection; such infection is so poisonous as to kill 65 per cent of people affected thereby; sausage, as well as other foods, is sometimes infected with botulis bacilli, or botulism; botulism produces a toxin that would seriously affect the body.

In answer to a hypothetical question this witness said that eating tainted or poisoned sausage could produce a physical condition such as plaintiff's illness.

The witness testified that vegetables, and dairy products such as milk, cheese, and ice cream, when unwholesome, were just as poisonous as unwholesome sausage and just as apt to produce the same results on the body.

Certain witnesses, customers of defendant's store, testifying for plaintiff, said they had seen green flies in the meat case.

Such was plaintiff's case.

Two physicians who had treated plaintiff during her illness were called for defendant. Plaintiff's regular physician died prior to the trial. These witnesses said that poisoned food would not produce rheumatism or arthritis.

Another witness for defendant, who had worked in defendant's store at the time the meat was purchased, testified that all meats were duly inspected and approved by proper authorities, and were always under refrigeration.

Defendant says the trial court erred in refusing to direct a verdict in its favor.

It is urged that the evidence was insufficient to show that the sausage was spoiled or to show causal connection between the consumption of the sausage and the plaintiff's illness.

Assuming, though we do not decide, that a dealer in food products, regardless of due care, is duty bound to sell only wholesome foods, the burden here was on plaintiff to show that the defendant breached that duty and that she suffered the injuries complained of as a proximate result thereof. If the sausage was poisoned as alleged, the defendant was negligent; if eating the sausage caused the illness, defendant was liable in damages.

The general rule is that primary negligence may be established by circumstantial evidence (Sheridan Oil Co. v.

Wall, 187 Okla. 398, 103 P. 2d 507); and proximate cause may be so established. St. Louis & S. F. R. Co. v. Darnell, 42 Okla. 394, 141 P. 785. The alleged sale of unwholesome food and the resulting injuries from the consumption thereof would fall within these rules.

But where the cause of an accident is sought to be established by circumstantial evidence, such evidence must be of the character that will permit a logical conclusion on the question. Where one conclusion would be as sound as another, the evidence may then be said to leave the matter wholly within the realm of mere conjecture, and any conclusion would be the result of a common speculation. A prima facie case is not established in such circumstances, and a demurrer to the evidence or motion for directed verdict would be in order. We held in Lawson v. Anderson & Kerr Drilling Co., 184 Okla. 107, 84 P. 2d 1104, that "evidence which makes it necessary to speculate as to what caused an accident is not sufficient to withstand a demurrer and take the issue of negligence to the jury for determination." And in that case we held further as follows:

"An inference of negligence must be based upon something other than mere conjecture or speculation, and it is not sufficient to introduce evidence of a state of facts simply consistent with or indicating a mere possibility, or which suggests with equal force and leaves fully as reasonable an inference of the non-existence of negligence. The inference of negligence must be the more probable and more reasonable inference to be drawn from the evidence."

The latter rule will apply in this case. Here, the evidence most favorable to plaintiff was that she ate some sausage along with other food and became ill; she purchased only the sausage from the defendant; spoiled sausage will sometimes cause such an illness; and the cheese and milk she consumed at the same time, if tainted, will, just as often as spoiled sausage, cause the same kind of illness. With the exception that the plaintiff became ill, there is nothing to indicate that any of the food was spoiled. It is true, she thought the sausage smelled like it had medicine in it while cooking, but this would not indicate unwholesomeness. Some of plaintiff's witnesses said they had seen green flies inside the meat case at defendant's store. This statement is obviously of no probative value whatever.

To sum up the evidence further, the plaintiff ate two different kinds of food, neither of which was shown to be tainted or unwholesome, except by the circumstance that she fell ill. Either of the foods, if tainted, would have poisoned her as quickly as the other, and in the same manner. To single out one as the cause to the exclusion of the other would be mere speculation. The question of negligence should not have been submitted to the jury.

The judgment is reversed and the cause remanded, with directions to grant defendant a new trial.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, BAYLESS, HURST, DAVISON and ARNOLD, JJ., concur.