**John R. HURLEY, and The Merchants National Bank of Muncie, Co-Executors of the Estate of Anson G. Hurley, Deceased,**

**John R. Hurley, Special Administrator of the Estate of Shirley P. Hurley, Deceased,**

**W. Gale Pheneger and The Merchants National Bank of Muncie, Co-Administrators of the Estate of Inez Elizabeth Hurley, Deceased, Plaintiffs-Appellants,**

v.

**BEECH AIRCRAFT CORPORATION, Defendant-Appellee.**

**No. 15065.**

United States Court of Appeals Seventh Circuit.

Jan. 26, 1966.

Rehearing Denied Feb. 28, 1966. (En Banc).

James J. Stewart, Indianapolis, Ind., William F. Radcliff, Muncie, Ind., Terence L. Eads, Murray, Stewart, Irwin & Gilliom, Indianapolis, Ind., Bracken, Defur, Voran & Hanley, Muncie, Ind., for appellants.

Erle A. Kightlinger, Indianapolis, Ind., Harry A. Wilson, Jr., Howard J. De-Trude, Jr., Indianapolis, Ind., Armstrong, Gause, Hudson & Kightlinger, Indianapolis, Ind., of counsel, for appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

This is an appeal by plaintiffs [1] from the judgment of the district court resulting from the dismissal of count 1 of plaintiffs' complaint against Beech Aircraft Corporation.

Plaintiffs' complaint alleged in count I that on April 17, 1961, Dr. Anson G. Hurley, a qualified and licensed pilot, purchased from a dealer of Beech Aircraft a Beech "Bonanza" airplane, which airplane was expressly and impliedly warranted to be airworthy, free from defects, and safe for flight and use in the manner and for the purposes for which it was designed and intended.

On June 24, 1961, Hurley and his wife, Inez Elizabeth Hurley, and his sister-in-law, Shirley P. Hurley, took off on a routine flight in the plane from Muncie, Indiana to Teeterboro, New York. Dr. Hurley was flying the plane at about 11,000 feet when, suddenly, the complaint alleges the left wing of the plane separated from the fuselage due to the failure of the upper main span attachment bolt and nut; and that, as a result, the airplane became uncontrollable and crashed, killing Hurley, his wife and his sister-in-law.

The complaint further alleges that the airplane warranty had been tortiously breached because the aircraft was defective, not airworthy, and unsafe for flight and use in the manner and for the purposes for which it was intended and designed. The defect in the plane was alleged to have existed because of the faulty design, construction, assembly, and attachment of the left wing to the aircraft.

Count II of the complaint makes substantially the same allegations, but proceeds under a negligence theory of action rather than implied warranty.

Because of the trial court's holding that privity of contract was essential to an implied warranty cause of action in Indiana, it dismissed count I of plaintiffs' complaint.

Trial was had without a jury on count II, the negligence action, and the court found in favor of defendant. Plaintiffs

---

1. Plaintiffs are the personal representatives of the respective estates of Anson G. Hurley, Inez Elizabeth Hurley and Shirley P. Hurley, deceased.

have not appealed from the adverse judgment on count II.

Plaintiffs assert as error the action of the district court in dismissing count I of plaintiffs' complaint, based on implied warranty and the failure of the district court to grant plaintiffs' motion to alter or amend judgment, or in the alternative, for a new trial.

On appeal, both parties are agreed the trial court misinterpreted the law of Indiana and that the decision of this court in Dagley v. Armstrong Rubber Company, 7 Cir., 344 F.2d 245 (1965), holding privity of contract is not essential to an implied warranty cause of action in Indiana, is controlling.

In fairness to the learned district court, it should be noted that this dismissal of count I came about nine months prior to our ruling in *Dagley*, and the trial court's ruling in the instant case was consistent with its prior ruling in *Dagley*.

Defendant, however, argues the trial court committed no prejudicial error in dismissing the implied warranty count because the findings of fact necessarily made by the trial court in the trial of the negligence count collaterally estop plaintiffs from proceeding to a trial on the breach of warranty count. It is asserted the factual allegations upon which the plaintiffs must rely in the implied warranty suit, defect in the aircraft, have already been adjudicated adversely to plaintiffs in the negligence trial.

Plaintiffs, on the other hand, argue it was not necessary for the trial court to make findings with respect to defect in the negligence suit and, therefore, they are not estopped to proceed under the implied warranty count.

Both plaintiffs and defendant assert that *Dagley*, supra, supports their respective positions. Plaintiffs contend the action taken in *Dagley*, a remand to the district court for a trial on the issue of implied warranty raised in count I of the complaint, is appropriate.

Defendant, on the other hand, insists that *Dagley* is distinguishable from the instant case and cites the following language in support of its contention that had *Dagley* come before us on appeal in the posture of the instant case, it would not have been remanded.

"Since the jury returned a general verdict on the negligence counts, we cannot determine the basis of its verdicts for defendants. It could have found, e. g., that there were defects in the tire but that defendants were not negligent in designing or manufacturing the tire, or, that Collins was negligent in the operation of the truck and such negligence contributed to the accident.

"We hold that the jury verdict and judgment on the negligence counts were not *res judicata* as to the warranty counts." *Dagley*, supra, 344 F.2d at 250.

The essential allegations of defect in the aircraft in count I are:

"7. * * *. That said deceased was on said date flying said aircraft at about 11,000 feet over Licking County, Ohio when suddenly and without warning the left wing of said aircraft became detached therefrom, due to the failure of the upper main span attachment bolt and nut, and said aircraft became uncontrollable and as a consequence crashed to the ground as a result of which the said Anson G. Hurley and his wife, Inez Elizabeth Hurley, then and thereby suffered fatal injuries.

"8. That said aircraft was not as expressly and impliedly warranted by the defendant, but was in fact defective, not airworthy, and unsafe for flight and use in the manner and for the purpose for which it was intended and designed in that the left wing thereof as designed, constructed, and assembled, was not properly and securely fastened or attached to the fuselage * * *."

Count II of plaintiffs' complaint, the negligence action, recites the following as the essential allegations of negligence: incorporates by reference as rhetorical paragraph 6, rhetorical paragraph 7 from

count I, quoted supra; and repeats verbatim, with the exception of replacement of the breach of implied warranty allegation with a negligence allegation, as rhetorical paragraph 7 of count II, the language of rhetorical paragraph 8 of count I, quoted supra.

At a pre-trial conference, plaintiffs were required to amend count II to make rhetorical paragraph 7 more specific. The paragraph was amended to allege in substance that defendant was (a) negligent in the design of the aircraft in that the wing attachment bolts were loaded in tension; (b) negligent in manufacture through a partial stripping or weakening of the nut and bolt assembly by over-torquing; (c) negligent in the assembly through over-torquing the nut and bolt assembly and failure to inspect and test the assembly; (d) negligent in selling a defective and unsafe product; (e) negligent in securing the wing to the fuselage through weakening the nut and bolt assembly by over-torquing and providing less than the designed strength. At the court's request, (d) was made more specific by alleging as particulars, (a), (b), (c), and (e).

Until the amendment of count II, there was an identity of factual allegations between counts I and II. The only substantive difference between the counts lay in their respective theories of action. Reading the original count I and amended count II together, it is clear that the defect in the aircraft alleged in count I is the same defect which was particularized in amended count II. Proof of the same defect was essential to recovery under either theory of the complaint.

On the question of the particular structural defect involved in both theories of action, the trial court made the following relevant findings at the conclusion of the trial on the negligence action:

"26. * * *. Each of the four nut and bolt assemblies attaching the left wing to the carry through structure had a maximum torque applied in installation of not to exceed 2300 inch pounds. The threads on each of the bolts and in each of the nuts

used in attaching such left wing were not stripped or sheared and were not weakened. Such nut and bolt attachments were properly attached and would withstand the designed positive and negative load limits of the plane in question.

"27. The torquing of the nuts and bolts referred to in item 26 did not partially strip, or shear, or otherwise weaken any one of the nut and bolt assemblies attaching the left wing to the carry through structure of the plane below the designed strength and security of each nut and bolt.

" * * *.

"29. The aircraft in question as actually assembled and sold by defendant was not dangerous, as alleged in count two of plaintiffs' complaints, to the lives of the intended users thereof."

According to these findings, the particular defect in the aircraft on which the negligence action was tried did not exist. Further, according to general finding 29, the aircraft was not found to have been dangerous to the lives of the intended users, as alleged in count II.

The court entered further positive findings of fact as to what did happen in regard to the separation of the left wing from the plane.

"30. * * *. The plane was subjected to excessive up and down loads on its structures far in excess of the up and down loads for which the plane was designed. The excessive loads severely damaged and weakened the structures of the plane including the separation of the left wing from the plane in the air at some point substantially below 7,000 feet and substantially above ground level. * * *."

The court went on to state in finding 31 that the proximate cause of the plane's descent from 11,000 feet, its assigned altitude, to 7,000 feet, where it was observed by witnesses to be out of control, was not discernible from a preponderance of the evidence.

In sum, in their negligence case, plaintiffs were not able to show any defect in the aircraft nor any negligence on the manufacturer's part. Unless plaintiffs in their implied warranty action could allege some defect not alleged in the negligence action or not decided in the negligence action, they have had the issue of defect determined. That plaintiffs would rely on the same defects as were alleged in the negligence action appears evident from their briefs on appeal. They do not charge that a dismissal of the warranty action prevented them from raising some other defect in the plane not touched on in the negligence action. They make the somewhat vague and indefinite claim that permissible evidence and burdens of proof would be different and would favor them by forcing defendant to show the lack of any defect in the plane.

Plaintiffs' position is that in a trial on the breach of warranty, they would have only to show that there was an in-flight structural failure of a brand new aircraft, that failure being identified as the separation of the wing while the plane was apparently in routine normal flight. This position fails to take into account the findings of fact of the trial court in the negligence action, quoted supra, which attribute the structural failure to excessive forces upon the plane and which state that the separation did not occur during the normal flight of the aircraft, but after it had descended to 7,000 feet from 11,000 feet in considerably less than a minute. Thus, the fact upon which plaintiffs are compelled to base their entire breach of warranty action, i. e., a defect in the aircraft, is a fact with respect to which the trial court has already made an adverse finding.

In United States Rubber Company v. Bauer, 8 Cir., 319 F.2d 463, 465–466 (1963), plaintiff farmer was injured when the drive belt on his combine broke and struck him on the head. He sued the manufacturer of the belt, basing his action on negligence and implied warranty. The case was tried to the court on both theories. Applying relevant state law on appeal, the court held that a defect in the product is never presumed merely from proof of the accident, but rather must be affirmatively proved. It also held that in the absence of proof of the existence of a defect a defendant may not be held liable for negligence in manufacture or responsible on the theory of implied warranty. We find no inconsistency with the substantive law of Indiana in this holding.

In General Motors Corporation v. Wolverine Insurance Company, 6 Cir., 255 F. 2d 8, 9 (1958), a negligence action, it was held that where no negligence was shown in the manufacture, assembly or inspection of the left rear wheel of an automobile, and where no proof of any defect in the wheel was offered, the plaintiff had failed to show negligence as a matter of law. The court also held that standing alone the happening of an accident raises no presumption of negligence.

In Lovas v. General Motors Corp., 6 Cir., 212 F.2d 805, 807 (1954), recovery for wrongful death was sought due to a collision allegedly caused when the steering wheel of a tractor manufactured by defendant came off its shaft. In affirming a directed verdict for defendant, the court said: "In order to have her case submitted to the jury appellant had the burden of introducing evidence of probative value which would tend to show that the steering wheel came off the steering shaft because of the negligent construction or assembly of the wheel and shaft, and that the accident was caused by such a defect."

In the instant case, it appears logical and sound to say that plaintiffs have the burden to prove by affirmative evidence that a defect in the aircraft caused the fatal accident in controversy as a prerequisite to recovery under either negligence or implied warranty. We so hold.

On the issue of collateral estoppel by judgment, defendant cites Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954). There, the court said:

"We have often held that under the doctrine of *res judicata* a judgment entered in an action conclusively settles that action as to all matters that were or might have been litigated or adjudged therein. But a prior judgment between the parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' This latter aspect of *res judicata* is the doctrine of collateral estoppel by judgment, established as a procedure for carrying out the public policy of avoiding repetitious litigation." Id. at 90–91, 74 S.Ct. at 415–416.

Language even more in point appears in United States v. Moser, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924): "But a *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law."

Yates v. United States, 354 U.S. 298, 335–336, 77 S.Ct. 1064, 1085–1086, 1 L.Ed.2d 1356 (1957) is also pertinent:

"We agree * * * that the non-existence of a fact may be established by a judgment no less than its existence; that, in other words, a party may be precluded under the doctrine of collateral estoppel from attempting a second time to prove a fact that he sought unsuccessfully to prove in a prior action. * * *

" * * *. That doctrine [collateral estoppel] makes conclusive in subsequent proceedings only determinations of fact, and mixed fact and law, that were essential to the decision."

Later in the same opinion, the court makes the following statement: "The normal rule is that a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts in issue in the subsequent proceeding." Id. at 338, 77 S.Ct. at 1087.

We have held that even if a subsequent action is a different cause of action, a right, question, or fact determined in the prior action must, as between the same parties, be taken as conclusively established, so long as the judgment in the prior action remains unmodified. Florasynth Laboratories v. Goldberg, 7 Cir., 191 F.2d 877, 880 (1951); June v. George C. Petersen Co., 7 Cir., 155 F.2d 963, 965 (1946); Hummel v. Equitable Life Assur. Soc., 7 Cir., 151 F.2d 994, 996 (1945).

Plaintiffs do not dispute the law of collateral estoppel by judgment; but they do try to escape its effect by arguing that the only findings essential in the negligence case would have been findings to the effect that the defendant assembled, inspected and tested the plane as a prudent manufacturer would have done under the circumstances and exercised ordinary care in the process. This argument ignores the fact that to find no defect in the aircraft is to find no basis for the charge of negligence in the manufacture of the aircraft and is thus merely a negative way of stating that the manufacturer was not negligent.

■ In light of the foregoing, we conclude that the question of fact, whether the aircraft was defective, was common to both counts of the complaint. Without such defect, there could have been no negligence as charged in count II and no breach of implied warranty as charged in count I. The determination of that fact was critical to the trial court's determination of count II and was not beyond the issues. Under the doctrine of collateral estoppel by judgment, plaintiffs are now barred from proceeding under count I.

We had not decided Dagley v. Armstrong Rubber Company, 7 Cir., 344 F.2d 245 (1965), at the time the trial court in the instant case dismissed count I for lack of privity of contract. Retrospectively, such dismissal was erroneous. However, under the facts of this case, it was not prejudicial to plaintiffs because

of the bar raised by the doctrine of estoppel by judgment, as above set out.

The problem presented by this appeal will not likely recur as long as the rule in *Dagley,* with reference to lack of privity in contracts, is recognized as the law of Indiana.

For the foregoing reasons, the judgment appealed from is affirmed.

Affirmed.

KILEY, Circuit Judge (specially concurring).

I concur in the holding of the court as limited to the facts here, with one observation:

As Chief Judge Hastings states, plaintiffs did not show here that they would not have relied, had Count I not been dismissed, upon the allegation of the defects found nonexistent in the trial on Count II. In my view, had the showing been made, justice would require remanding for the opportunity to amend Count I. But remand on this record merely to have defendant urge upon the district court a plea of collateral estoppel in defense of plaintiffs' vital allegation would be an unnecessary delay in passing on a question of law.