**PROCTER & GAMBLE MANUFACTURING COMPANY et al., Appellants,**

**v.**

**Virginia LANGLEY et al., Appellees.**

No. 16971.

Court of Civil Appeals of Texas.

Dallas.

Nov. 10, 1967.

Rehearing Denied Dec. 29, 1967.

James A. Williams, of Bailey, Williams, Weber & Allums, Dallas, for appellants.

Joann Peters, of Welz, Anderson, Rogers & Peters, Dallas, for appellees.

DIXON, Chief Justice.

This is a products liability case. Appellees Virginia Langley and husband, Willis Langley, sued appellants Procter & Gamble Manufacturing Company, Procter & Gamble Distributing Company and Tom Thumb Stores, Inc. for damages alleged to have resulted from the use by Mrs. Langley of home permanent hair wave products called "Milk Wave Lilt."[1] Appellees allege that the three appellants are respectively the manufacturer, the wholesale distributor and the retail seller of the products.

In their pleadings appellees allege specifically that appellants Procter & Gamble Manufacturing Company and Procter & Gamble Distributing Company impliedly warranted that Milk Wave Lilt was fit for home permanent hair waving, was wholesome and noninjurious and did not contain any harmful substance. No such allegations were directed specifically at appellant Tom Thumb Stores, Inc., but it was alleged generally that the product was not fit for use "as warranted by defendants."

A jury made findings that (1) Virginia Langley purchased from Tom Thumb Stores, Inc. a box of "New Milk Wave Lilt Home Permanent" preparation, (2) which preparation she applied; (3) she lost hair from her head following such application; (4) the product was a proximate cause of such loss of hair; (5) the product was unmerchantable and unfit for the purpose for which it was intended; (6) Virginia Langley failed to make a 10 minute test curl to see if her hair could take a wave before applying the product; (7) but such failure was not negligence; (9) during the application of the product the strands of hair felt sticky and gummy; (10) after her hair felt sticky and gummy, she failed to use liquid neutralizer at once; (11) but such failure was not negligence; (13) she waved more hair after feeling strands of hair which were sticky and gummy; (14) but such act was not negligence.

Appellants filed motions for instructed verdict, for judgment *non obstante veredicto*, and for the court to disregard certain issues. These motions were overruled. Judgment was rendered in favor of appellees for $5,549.25, the amount of damages found by the jury.

## EVIDENCE

### 1. *Mrs. Langley's Testimony.*

Virginia Langley testified that she purchased the boxed package of home permanent wave products after watching a television commercial advertising them. In her home, after mixing the powder product with milk, she applied the preparation to her hair and almost immediately her hair started coming out. It did not come out from the roots, but broke off some distance from her scalp, with the result that her hair, which has been shoulder length and in good condition, was very short, brittle and otherwise in very poor condition, lacking its former luster, etc. Her hair continued to come out for some time and required a year to grow back. Meantime she purchased a wig for $89.00, as her hair was too unsightly to be seen by the public in performing her duties as a waitress.

Mrs. Langley testified that she had in previous years given herself four home permanent waves without ill effects and had given herself one home permanent without

---

1. The package or kit purchased by Mrs. Langley included a bottle of powder, papers for curling the hair, a bottle of neutralizer and a pamphlet of instructions and warnings. The lotion for curling was prepared by the user by mixing the powder with ordinary milk, a bottle for that purpose being included in the kit.

ill effects since her experience with appellants' products.

Mrs. Langley did not keep or save any of the hair waving products which she claims in this instance damaged her hair. She disposed of them by throwing them away without having an analysis of them made.

On the outside of the carton in which the products were packaged were the words "FOR ANY TYPE OF HAIR." However, in an accompanying pamphlet were the following explicit instructions and warnings:

"BEFORE YOU START

\* \* \* \* \* \*

"*Remember—you shouldn't use any permanent, unless your hair is in good condition.* So, a few reminders.

\* \* \* \* \* \*

"3. *If your hair is* bleached, *tinted* or color-treated *in any way* or if it is in delicate condition (dry, brittle, breaking off, etc.) *make test curls to see if your hair can take a wave.* \* \* \* *If at any time, these strands feel sticky* or gummy, *use the liquid neutralizer at once and do not wave any more of your hair.* If no gumminess occurs, but *if your test curls, when dry, are frizzy, discolored, break easily or show any other signs of hair damage, this also means that you should not wave the rest of your hair.*

\* \* \* \* \* \*

"3. TIMING

*Leave hair in curlers 10 minutes.*

Rinse wound curls with comfortably hot water.

Wait 30 minutes." (Emphasis ours.)

The pamphlet contained these additional warnings:

"1. Keep waving powder (and when mixed, waving lotion) and liquid neutralizer out of eyes, ears, nose and mouth and off your face and neck. (Keep out of reach of children also.) \* \* \* If any waving powder, waving lotion or liquid neutralizer does get in your eyes, ears, nose or mouth or on your face or neck, rinse it away *immediately* with clear water. If you spill any waving powder, waving lotion or liquid neutralizer on clothes or furniture, rinse this also with clear water."

Mrs. Langley testified that she read the above instructions and warnings. She understood that the instruction and warning in regard to the strands of hair being sticky meant "Just what it says."

However, her own testimony shows beyond dispute that she failed to follow but violated the above instructions in the following particulars:

(1) Her hair had been tinted some time in the preceding month of August, so she did make a test curl; but she left the lotion on for only four, not for ten minutes, before checking to see if the test was all right.

(2) At the end of four minutes she found the test curl was sticky; nevertheless she did not follow the direction that "*If at any time these strands feel sticky or gummy use the liquid neutralizer at once and do not wave any more of your hair.*" (Emphasis ours.) To the contrary, she did not use the "neutralizer at once," but proceeded immediately to apply the lotion to the rest of her hair.

(3) Then she left the lotion on her hair for twenty minutes—twice the time stated in the instructions.

*2. Medical Evidence.*

Dr. Robert N. Machen, a physician and surgeon and Mrs. Langley's family physician, testified that he had treated her and prescribed medicines for her on a number of occasions between March and October of 1963, including two surgical operations under general anesthetics. So far as he knew her hair had been in good condition prior to October 1963. Mrs. Langley went to see Dr. Machen in October about her

hair after it began to break off. He did not undertake to treat her for this condition, but referred her to Dr. John L. Kestel, Jr., a dermatologist.

Dr. John L. Kestel, Jr., the dermatologist to whom Mrs. Langley was referred, testified by deposition. His written medical report was introduced in evidence. It is as follows:

"HISTORY On Oct. 12, 1963 she gave herself a milk wave Lilt Permanent. Since then she has experienced hair loss. There has been some itching present since but she does not recall marked redness, scaling, on the edges of the scalp or forehead. Last time tint on hair was August 1963. She had a D. and C. (general anaesthetic) in June 1963 and Hemorrhoid operation in August or Sept. 1963 (general Anaesthetic). She used plastic rollers when had permanent: not used nylon rollers at all. Patch tested ahead of time for 12 minutes with no reaction.

"DESCRIPTION No noted hair thinning. Scalp appears normal. The distal ⅔ of all the scalp hairs are light red-blonde color, dry, loss of luster, brittle and broken off. No club hairs seen.

"DIAGNOSIS Change in hair character from outside chemical or influence."

Mrs. Langley's medical bills amounted to $5.00 paid to Dr. Machen and $15.00 to Dr. Kestel.

### 3. Mrs. Krumdieck's Testimony.

Mrs. Doris Krumdieck, a teacher of cosmetology at Flatt's Beauty College, was a witness in behalf of appellees. Mrs. Krumdieck was positive in her disapproval of any and all home permanent treatments. She had never given a home permanent treatment. She knew nothing about Milk Wave Lilt. She had never examined the product and did not know the chemical content of its ingredients. She testified that a solution containing thioglycolic acid, used by professional beauticians in giving permanent hair waves, could be harmful if used to excess. She did not know whether Milk Wave Lilt contained any such acid.

There is no testimony that Milk Wave Lilt contains thioglycolic acid. Appellants without avail objected to Mrs. Krumdieck's testimony. There is testimony that Milk Wave Lilt contains thioglycolate, an alkali, but no testimony that it contains thioglycolic acid.

### 4. Testimony of A. R. Thomas.

A. R. Thomas, a chemical engineer, is manager of the hair care and new products section of the Products Research Department of Procter & Gamble Company. He testified that the basic chemical systems of Milk Wave Lilt were under investigation for six or seven years and the product itself for two or three years before being put on the market. It was tested on the hair of 1,000 to 1,500 women. The powder used is a combination of potassium thioglycolate and a material called THAM. It is an alkaline, not an acid solution. The neutralizer consists of a 1.3% solution of hydrogen peroxide with a small amount of preservative. According to Thomas the products are harmless. He testified that Milk Wave Lilt has been marketed since 1962 with sales amounting to between four and five million units and only thirty or thirty-five complaints of hair breakage.

Mr. Thomas at one point in his testimony stated that the powder mixed with milk produced a sticky lotion. A few questions later in his testimony he stated that the mixture was not sticky.

## OPINION

Two recent cases, decided by our Supreme Court while this appeal was pending before this court, require our attention.

In L. A. McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.1967), a case

involving a permanent hair waving product, the doctrine of strict liability was held to be applicable to defective products which cause physical harm to persons. The doctrine had already been adopted so far as concerned foodstuffs for human consumption. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942). In *McKisson* the court quoted with approval the rule of strict liability as stated in Section 402A of the American Law Institute's Restatement of the Law of Torts (2d Ed.) and also Comments (a) and (n) under Section 402A.

In the McKisson case it was held that Mrs. McKisson may have been at fault in not discovering that the product was unsuitable for bleached hair (a jury so held); but that "This species of contributory negligence is not a defense to strict liability." The court also held that privity of contract is not a requirement in strict liability cases.

Shamrock Fuel & Oil Sales Co., Inc. v. Tunks, 416 S.W.2d 779 (Tex.Sup.1967), was a mandamus case involving questions of products liability. It was held that as a general rule contributory negligence is not a defense to strict liability; but that contributory negligence is a defense when it consists of a voluntary and unreasonable proceeding to encounter a known danger, as for example in assumed risk and *volenti non fit injuria.*[2] The court declined to pass on the question whether "improper use" is also a defense, or if allowable, is part of a plaintiff's action.

 In their first three points on appeal appellants attack the jury finding in answer to Special Issue No. 5 to the effect that New Milk Wave Lilt Home Permanent preparation used by Mrs. Langley was unmerchantable and unfit for the purpose for which it was intended. Appellants say there was no evidence, or there

was insufficient evidence, to support the jury's finding. We agree with appellants.

At the outset we are faced with the fact that Mrs. Langley disposed of all the Milk Wave Lilt products she did not use without having them chemically analyzed. Consequently there was not and could not be any direct testimony that the particular products she purchased were in any way defective or harmful if properly used. Neither do the circumstances constitute evidence to that effect.

We are aware of the statement in the McKisson case: "When it is shown that the product involved comes in a sealed container, it is inferable that the product reached the consumer without substantial change in the condition in which it was sold." Mrs. Langley testified that when she bought the powder and neutralizer they were in sealed bottles. She also testified (the testimony of Thomas is inconsistent on the question) that the mixture of powder and milk was sticky. But there is no evidence that it is a defect in the lotion itself for it to be sticky before its application to the user's hair.

The law which we believe to be applicable in this case is stated in Section 402A, Comment (g) of the Restatement of the Law of Torts (2d Ed.) where, speaking of strict liability it is said:

> "The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."

---

2. Questions of contributory negligence in this case were submitted to the jury and found favorably to Mrs. Langley. Since we have concluded that the judgment here must be reversed on other grounds we shall not pass on the question of contributory negligence in this case.

See also Corneliuson v. Arthur Drug Stores, Inc., 153 Conn. 134, 214 A.2d 676 (1965) and Rexall Drug Co. v. Nihill, 276 F.2d 637, 79 A.L.R.2d 419 (9th Cir. 1960); Prosser, "The Fall of the Citadel", 50 Minn. Law Rev. 791 (1966), reprinted in Schreiber and Rheingold, "Products Liability", page 2.50. We find no evidence that the Milk Wave Lilt purchased and used by Mrs. Langley was in defective condition at the time it left the hands of the seller, Tom Thumb Stores, Inc. Appellants' first point is sustained.

If we be mistaken in the above conclusions we are nevertheless convinced that the jury's finding as to unmerchantability and unfitness is so contrary to the great weight and preponderance of the credible testimony as to be manifestly wrong. Appellants' second and third points are therefore sustained.

■ In their fourth and fifth points appellants assert that it was error for the court to render judgment for Mrs. Langley since she failed to comply with the printed instructions for the use of the wave products. We agree with appellants. In this opinion under the heading "EVIDENCE, 1. *Mrs. Langley's Testimony*" we enumerated the particulars in which Mrs. Langley beyond dispute failed to follow instructions, or to heed the printed warnings for the use of the products in question. They need not be repeated here. We are of the opinion that Mrs. Langley's violation of the plain instructions and warnings was a misuse of Milk Wave Lilt and constitutes a defense to her cause of action. This seems to be especially true when as in this case the user testifies that she read the instruction in regard to sticky strands of hair after a ten minute test curl and that she understood the instruction to mean "just what it says."

The law of strict liability applicable to this situation we believe to be correctly stated in the Restatement of the Law of Torts (2d Ed.), Section 402A, Comment (j):

"Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

See also Matthias v. Lehn & Fink Products Corp., 424 P.2d 284 (Wash.1967); Pinto v. Clairol, Inc., 324 F.2d 608 (6th Cir. 1963); Arata v. Tonegato, 152 Cal. App.2d 837, 314 P.2d 130 (1957); Taylor v. Jacobson, 336 Mass. 709, 147 N.E.2d 770 (1958); Prosser, "The Fall of the Citadel", 50 Minn.Law Rev. 791, reprinted in Schreiber and Rheingold, "Products Liability", page 2.35; Hursh, "Products Liability Supplement", Sec. 5A:12.

In their sixth, seventh and eighth points appellants contend that there is no evidence, or there is insufficient evidence to support the jury's finding that the Milk Wave Lilt preparation which Mrs. Langley applied on October 23, 1963 was a proximate cause of the loss of her hair. Again we agree with appellants.

■■ Proximate cause is not to be presumed. It must be proved by evidence. As a general rule the fact that injury follows the use of the product is not of itself alone a basis for a finding of proximate cause. Patterson v. George H. Weyer, Inc., 189 Kan. 501, 370 P.2d 116 (1962); Hurley v. Beech Aircraft Corp., 355 F.2d 517 (7th Cir. 1966); Green v. Ralston Purina Co., 376 S.W.2d 119 (Mo.Sup.1964); Cudmore v. Richardson-Merrell, Inc., 398 S.W.2d 640 (Tex.Civ.App., Dallas 1966, writ ref'd n. r. e.); Watson v. Borg-Warner Corp., 190 Tenn. 209, 228 S.W.2d 1011 (1950); Stewart v. Martin, 353 Mo. 1, 181 S.W.2d 657 (1944); Safeway Stores, Inc. v. Fuller, 189 Okl. 556, 118 P.2d 649 (1941); Kapp v. Bob Sullivan Chevrolet Co., 234 Ark. 395, 353 S.W.2d 5 (1962); China Doll Restaurant, Inc. v. MacDonald, D.C.Mun.App., 180 A.2d 503 (1962); Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769 (1965);

Wade, "Strict Tort Liability", 19 S.W.Law Jour. 13 (March 1965); Prosser, "The Fall of the Citadel", 50 Minn.Law Rev. 791, reprinted in Schreiber and Rheingold, "Products Liability", page 2.50.

■ There are cases which at first glance might seem contrary to the above holding, but as we understand them they are not so; for they are based on the premise that the product was first proved to be contaminated, or that it contained a harmful ingredient. That fact being established, an inference of proximate cause may arise under some circumstances from the fact that injury followed the use of the product. Benjamin v. Hot Shoppes, Inc., D.C.Mun. App., 185 A.2d 512 (1962); Gilbert v. John Gendusa Bakery, Inc., La.App., 144 So.2d 760 (1962); Braun v. Roux Distributing Co., Inc., 312 S.W.2d 758 (Mo.Sup.1958); Bundy v. Ey-Teb, Inc., 160 Misc. 325, 289 N.Y.S. 905, 248 App.Div. 596, 288 N.Y.S. 1078. But that is not the situation here.

■ There is no evidence, direct or circumstantial, that the particular products sold to Mrs. Langley and used by her were harmful if used properly. That the product was defective or harmful is a prerequisite to proximate cause under the strict liability rule. Hill v. Harbor Steel and Supply Corp., 374 Mich. 194, 132 N.W.2d 54 (1965); Swain v. Boeing Airplane Co., 2 Cir., 337 F.2d 940 (1964), cert. den. 380 U.S. 951, 85 S.Ct. 1083, 13 L.Ed.2d 969 (1965); Shramek v. General Motors Corp., 69 Ill.App.2d 72, 216 N.E.2d 244 (1966); Hursh, "Products Liability Supplement", Sections 1:3, 5A:11.

Appellants' sixth, seventh and eighth points are sustained.

In their ninth and tenth points appellants assail the judgment against Tom Thumb Stores, Inc., the retailer who sold the products in question to Mrs. Langley— the basis for the attack being that appellees neither pleaded nor proved warranty, express or implied, or any duty to appellees. We do not agree. We have concluded that the judgment against Tom Thumb Stores, Inc., must be reversed on other grounds, but not on the grounds above asserted by appellants. The ninth and tenth points are overruled.

■ Appellants' eleventh point seeks to absolve Procter & Gamble Manufacturing Company and Procter & Gamble Distributing Company because there was no evidence of privity between the two companies and appellees. On authority of the McKisson case, hereinbefore discussed, we overrule the eleventh point.

In their twelfth point the two Procter and Gamble Companies contend that there was no evidence of breach of warranty by them. We agree. This phase of the case is adequately covered in our discussion under appellants' first and second points and need not be repeated here. The twelfth point is sustained.

In their thirteenth to eighteenth points inclusive appellants say that the court erred in several specified instances in admitting over appellants' objection to testimony by Mrs. Krumdieck. We think these points are well taken and they are sustained.

Because of our sustaining of appellants' first, fourth, fifth, sixth and twelfth points we are of the opinion that the judgment of the trial court should be reversed and rendered to the effect that appellees take nothing by their suit against appellants.

Accordingly, the judgment is so reversed and rendered.

## ON REHEARING

Appellees on rehearing say that we have usurped the functions of the jury by substituting our findings for the findings of the jury. We have again reviewed the record in this case, but have concluded that we must adhere to our original decision.

Appellees say that the uncontroverted testimony is that the solution itself

when originally mixed *before* applying to the hair, was sticky. Even if true that is not the test. The instructions and warnings are unambiguous and explicit. If the hair has been tinted in any way (and Mrs. Langley's hair had been tinted) a test curl should be made. The test comes *after* the solution has been applied and the test curl allowed to remain in the rollers for ten minutes. Then if the test *hair* (not the solution itself) feels sticky the liquid neutralizer should be used *at once* and *the rest of the hair should not be waved.*

Mrs. Langley herself testified that she read the instructions and warnings and understood them to mean just what they say. Yet she chose to ignore them in the several particulars, which we detailed in our original opinion.

As to merchantability appellees rely on the general rule that chemical proof that a product is defective is not required—the defective condition of the product may be shown by circumstantial evidence. We do not disagree with appellees' statement as an abstract proposition of law. But it is not applicable here. If Mrs. Langley had faithfully complied with the written instructions and heeded the written warnings and had nevertheless sustained injury the situation would be different. But no such situation is presented to us.

We do not believe that the strict liability doctrine means that under circumstances such as we have here a consumer may knowingly violate the plain, unambiguous instructions and ignore the warnings, then hold the makers, distributors and sellers of a product liable in the face of the obvious misuse of the product.

Appellees brought their suit on the theory of implied warranty. We agree that the product carried an implied warranty of fitness, but such warranty existed only if the product was used in accordance with directions. The implied warranty did not apply when the product was misused, as it indisputably was in this case.

The McKisson and the Shamrock Fuel & Oil Sales Company cases, relied on by appellees, did not involve a violation of instructions. In fact in the McKisson case no instructions were furnished. In the Shamrock case an adulterated product was involved. In our opinion both of the above cases are distinguishable from this case.

The motion for rehearing is overruled.