**Tommie RYAN, Appellant,**

v.

**GALVESTON MODEL DAIRY, Appellee.**

**No. 15806.**

Court of Civil Appeals of Texas, Houston.

Nov. 18, 1971.

O. Otis Bakke, Dalton Jones, Houston, for appellant.

Mills, Shirley, McMicken & Eckel, Preston Shirley, Galveston, for appellee.

BELL, Chief Justice.

Appeal is from a judgment that appellant take nothing after the court, on motion of appellee, withdrew the case from the jury at the close of appellant's evidence.

Appellant's suit was to recover damages allegedly resulting to him when he drank a small part of a quart of chocolate milk on the morning of October 14, 1968. He bought it from H & B Food Store, a retail outlet. There is evidence that the milk was put in a sealed carton by appellee, a wholesaler, and sold to H & B. Appellant testified he got the milk from a shelf in the refrigerator in the store. There was a substantial number of other cartons of milk on the shelf. He took one from close to the front of the shelf. On drinking about two swallows he became ill. The milk tasted "bitter and sour like". It had a bad odor. He went home around noon because he was ill. He called his attorney and the attorney came to his home and obtained the remainder of the carton of milk. The attorney on the same day took it to a chemist. The chemist testified the fluid consisted of 26 fluid ounces in two liquid layers. The upper layer consisted of about 15 ounces of light amber watery liquid having an obnoxious odor. The lower layer consisted of a viscous chocolate colored material which also had an obnoxious odor. No bacteriological examination was made because the milk was spoiled when submitted for analysis. He concluded the milk was not fit for human consumption. Although permanent damage was not indicated, if taken internally, psychologically the food could cause transitory ill effects. He refrigerated the milk on receipt and examined it the same date. On cross-examination the chemist stated what he was saying was that the food was sour milk. It was really a little worse because it had an obnoxious odor.

In response to interrogatories propounded in writing to the defendant, its representative stated the markings on the carton in question did not indicate the date or place of processing or packaging because the markings were obliterated. The ingredients of the fluid were milk, powdered chocolate and sugar. The Dairy runs no tests to determine whether the ingredients are impure, but the federal and city authorities inspect regularly. Distribution is directly to retail stores. An employee named Walstein delivered milk to H & B between October 1–4, 1968. The interrogatories inquired as to the date of each sale to H & B between September 15, 1968 and October 5. The defendant's representative answered the records were not then available as they were kept for only three or four months. The date of propounding the interrogatories does not appear. Between September 15 and October 4 defendant had had no trouble with refrigeration on its trucks. Defendant's employees, on making delivery, deposit the milk directly in the "ice box".

We have only briefly noticed the illness allegedly resulting to appellant from drinking the two swallows of milk. It suffices to say there is sufficient evidence to show he did suffer some ill effects.

The only witnesses were appellant, his wife, two doctors, the chemist and defendant's representatives. No one from H & B testified, nor did Mr. Walstein, the delivery man for the defendant.

It will be observed that no precise date is shown as to when milk was delivered. We may infer from the interrogatories and answers that chocolate milk was delivered from time to time from September 15 to October 4. Also it may be inferred that Walstein made some delivery between October 1 and October 4. How often delivery would be made and the quantity are not shown. Neither is it shown how new deliveries are arranged in the refrigerator. Further, there is nothing from which it can reasonably be inferred that the particular carton purchased by appellant was from that delivered between October 1 and October 5. There is no evidence as to how the milk was handled after delivery.

Appellant's position is that there was a breach of an implied warranty that the milk was fit for human consumption. Certainly this is a correct rule of law under Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828. The warranty is created by law as a matter of public policy. However, the warranty is that it is fit for human consumption when it left the hands of the wholesaler. He is not responsible for defects that occurred after delivery to the retailer. The burden is on a plaintiff to prove that the defect was in the product when it left the hands of the wholesaler. Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546 (Tex.Sup.); Jack Roach-Bissonnet, Inc. v. Puskar, 417 S.W.2d 262 (Tex.Sup.); Proctor & Gamble Mfg. Co. v. Langley, 422 S.W.2d 773 (Tex.Civ. App.-Dallas), error dism'd; Jones v. Philco Distributors, Inc., 416 S.W.2d 611 (Tex.Civ.App.-Ft. Worth), n. w. h.

Appellant urges an extension of the rule announced in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.). There the court stated that "When it is shown that the product involved comes in a sealed container, it is inferable that the product reached the consumer without substantial change in the condition in which it was sold. * * * It appears that nothing was done with the curling preparation which could change its properties or characteristics after it was delivered to Mrs. McKisson."

We feel the holding of McKisson is inapplicable. There the evidence affirmatively showed the product was in the same condition as when delivered. Its intermediate handling was shown. Under the facts there shown there could have been no change in the product between the time of delivery and the time of use.

In this case not only was there no evidence from which date of delivery of the particular carton could reasonably be inferred, and there was no evidence about intermediate handling, but the nature of the product was entirely different. Here the product was chocolate milk in a carton.

It is a matter of common knowledge that milk is a perishable product. Here there is no showing of any delivery within ten days before purchase and no evidence on intermediate handling.

We feel a finding of a defect in the product at the time of delivery by appellee would be based on pure speculation.

Affirmed.