**Mari Pruitt WEST, Plaintiff-Appellee,**

v.

**ALBERTO CULVER COMPANY,** and **Safeway Stores, Inc., Defendants-Appellants.**

**No. 73–1153.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 13, 1973.

Decided Oct. 29, 1973.

Rehearing Denied Nov. 27, 1973.

J. Fern Black, Sheldon, Bayer, McLean & Glassman, Denver, Colo., for defendants-appellants.

Robert L. McDougal, Denver, Colo. (Gertrude A. Score, Denver, Colo., with him on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, and BARNES* and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

This is an appeal from a judgment on a verdict for $10,000 in a Colorado diversity case involving plaintiff West's claim for personal injury following the use of a product manufactured by Alber-

to Culver Company and sold by Safeway Stores, Inc. After return of the jury verdict defendants filed a motion for judgment notwithstanding the verdict and for a new trial limited to the issue of damages. The motions were denied and this appeal follows.

Plaintiff purchased a bottle of Alberto Balsam Super Hair Conditioning Formula after viewing a commercial advertisement on a local television station in October 1971 and after examining the label of the product in the Safeway Store several days later. Shortly thereafter plaintiff used the product on her hair according to the directions on the label, whereupon a gluey substance developed in her hair which became stiff and hardened. Plaintiff realized something was wrong when the product would not rinse out. After repeated washings the gluey substance that was twisting her hair remained embedded.

Plaintiff subsequently sought the aid of beauticians, a chemist and a dermatologist to remove the resin from her hair without the necessity of cutting her thirty-four-inch long hair. She occasionally wore a borrowed wig and later purchased a wig. Finally, in February of 1972, due to a lack of other advisable recourse, she cut the substance from her hair leaving her with about a half inch of hair. For a four-month period plaintiff did not work or leave her home other than to drive her mother to work or to run an occasional errand because of being embarrassed and humiliated.

Plaintiff testified to relying upon the language [1] of the television commercial and the language [2] on the label of the

---

* Of the Ninth Circuit, sitting by designation.

[1]. The secrets of a well-kept beauty salon secret is now ready for use at home.
On this side I'm using this new discovery called Alberto Balsam. It combines cream rinse and conditioners in one easy step. To prevent tangles like these, salons use this exact formula for tangle-free combing. And, for damaged hair, Alberto Balsam replaces thirty-minute conditioning treatments.
Use it regularly and even damaged split ends disappear. New Alberto Balsam combines cream rinse and conditioners.

[2].

ALBERTO BALSAM
SUPER CONDITIONING FORMULA

Extra conditioners for extra dry hair. Especially formulated for hair that is dry and brittle due to bleaching, coloring, or electric curlers.
ALBERTO BALSAM is an entirely new kind of hair beautifier that actually does two jobs in one sixty-second step! Replaces all types of creme rinses and conditioners—and does more than either.
This extra-rich Balsam blend contains special conditioning emollients to add life to

bottled product for her expectations regarding the results of the use of the product. Witnesses testified that prior to use of the product plaintiff's hair was long, in good condition and, moreover, that plaintiff's hair was an apparent great source of pride to her.

Dr. Cole, a chemist, testified that he had examined microscopically a sample of the product used by the plaintiff and a sample of the product from a newly purchased bottle. He related that the product plaintiff had used contained a clear "hyaline like" material and bacteria which were not found in the purchased sample. His tests with samples of plaintiff's hair showed that petroleum ether would dissolve the substance in the hair but this treatment was not recommended because of the possible dangerous effects. The chemist also attempted to remove the substance from plaintiff's hair through normal procedures, such as using boiling-hot water and soap, but concluded that it was not water soluble. Dr. Cole then applied the product which plaintiff used to some hair from another person and the effects were the same, namely, matting and twisting of the hair. Dr. Philpott, a dermatologist, testified that he examined plaintiff's hair physically and microscopically and that he advised plaintiff to cut her hair after all the unsuccessful attempts to remedy the situation. Both expert witnesses testified that plaintiff suffered no permanent damage to her hair and neither conducted a chemical analysis nor attempted to break down the secret formula of the product which would have cost about $35,000.

Defendants' evidence was limited to an account of the manufacturer's quality control procedures.

After a motion for a directed verdict in favor of defendants was denied the case was submitted to the jury with the result indicated.

Defendants make no appellate contention that the trial court erred in its instructions to the jury and the instructions have not been made a part of the record on appeal. We must adopt the premise, therefore, that defendants made no objection to the instructions and that our review is limited to a consideration of whether the totality of the evidence is sufficient, under any acceptable legal theory, to allow submission to the jury and to the particularized contention that the damages allowed were excessive as a matter of law.

We have no difficulty in holding that plaintiff established a prima facie case of breach of warranty and injury resulting from that breach. Plaintiff used the product according to the manufacturer's directions and for its intended use. The product was shown to be contaminated and an inference of proximate cause may arise from the fact of proven injury following use of the product. *See* Procter & Gamble v. Langley, Tex.Civ. App., 422 S.W.2d 773. So, too, the product was shown to be harmful to other hair. The evidence presents classic proof of breach of implied warranty for fitness of use and resultant injury.[3] We simply reject defendants' contention that plaintiff had the burden of providing a chemical analysis of the product to establish that the product contained inherently harmful ingredients. Nothing in the law requires a consumer to conduct exorbitantly costly tests to unravel a closely guarded secret formula.

Defendants contend that the verdict of $10,000 is unreasonable and ex-

---

dull, dry hair. As it smoothes out tangles, it deep conditions to help seal split ends and revitalize damaged hair. Adds healthy, lively lustre that lasts and lasts. Sixty-seconds and your hair will look and feel thicker and stronger than it ever could after using a creme rinse or conditioner alone.

3. Defendants do not argue these issues as such but limit their contention to a claim that plaintiff did not prove an express warranty existent in the advertising and labeling of the product. As we have indicated this limited approach to the issue is not preserved for appellate review.

462

cessive. They argue that the trial court erred in not awarding a remittitur or setting aside the jury verdict and ordering a new trial on the question of damages. We find no error. It is well settled in the law that an appellate court, in reviewing determinations by the jury and the trial court, is necessarily limited. The reviewing court must view the evidence in the light most favorable to the plaintiff and give her the benefit of all inferences that may reasonably be drawn therefrom and we should not set aside a finding or affirmation of a finding unless it is clearly erroneous. Hart v. Western Investment & Development Co., 10 Cir., 417 F.2d 1296; Lindsey v. Oregon-Washington Plywood Co., 10 Cir., 287 F.2d 710. Plaintiff was justified in making exhaustive and prolonged efforts to preserve her natural hair. The amount of the verdict did not shock the judicial conscience of the trial court nor does it shock this court.

Affirmed.