SOUTHWESTERN BELL TELEPHONE
COMPANY, Appellant,

v.

Napoleon M. GRIFFITH, Appellee.

No. 1333.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 7, 1978.

Rehearing Denied Dec. 29, 1978.

James M. Shatto, Gen. Atty. and Alex Guevara, Jr., Houston, Leland B. Kee, Angleton, for appellant.

Ernest H. Cannon, John M. O'Quinn, Riddle, Murphrey, O'Quinn & Cannon, Houston, Bert L. Huebner, Bay City, for appellee.

## OPINION

BISSETT, Justice.

In this products liability case involving a one-vehicle accident allegedly caused by a negligently and defectively installed mobile telephone unit, Southwestern Bell Telephone Company, appeals from a judgment rendered by the District Court of Matagorda County, Texas, in favor of Napoleon Griffith. Trial was to the court, sitting without a jury. Findings of fact and conclusions of law were filed. The parties will be referred to as "plaintiff" and "defendant," as they were in the trial court.

Defendant does not question the award of $420,371.68 as damages. It makes several distinct attacks on several rulings made by the trial court. It asserts that the trial court abused its discretion in refusing to grant it a continuance. It claims that several findings of fact are not supported by any evidence, or, in the alternative, that such findings are against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. It complains that the trial court erred in failing to make certain requested findings of fact. It contends that the judgment rendered by the trial court is void because of improper rendition and entry. Twenty-three points of

error, several of which contain numerous subsections, are brought forward in this appeal.

Defendant contends in its 22nd point that the judgment is void because: 1) it was not pronounced in open court; 2) it was not rendered in open court; and 3) it was signed by the trial judge outside of Matagorda County, Texas. The point cannot be sustained.

The judgment of a court is what the court pronounces; it is rendered whenever the trial court orally announces its decision in open court, or signifies out of court to the clerk of the court, in his official capacity, either orally or in writing, its decision of the law upon the matters at issue. *Comet Aluminum Company v. Dibrell*, 450 S.W.2d 56 (Tex.Sup.1970); *Knox v. Long*, 152 Tex. 291, 257 S.W.2d 289 (1953); *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040 (1912). A judgment regular on its face is presumed to be properly "pronounced" and "rendered." *Texas Life Insurance Co. v. Texas Building Co.*, 307 S.W.2d 149 (Tex. Civ.App.—Fort Worth 1957, no writ).

In the case at bar, the judgment is valid on its face. The docket entry relating to its "pronouncement" and "rendition" was made on July 28, 1977, and reads:

"Plaintiff awarded $407,000.00 plus all medical, hospital and drug bills admitted into evidence as per judgment to be filed."

The judgment was signed on October 10, 1977.

Defendant's amended motion for new trial was heard on December 7, 1977. Defendant's counsel was present at the hearing, and on that date, filed with the clerk a handwritten motion, wherein the trial court was requested to receive:

"Evidence as to circumstances surrounding time, place and circumstances under which Court's docket entry of July 28, 1977 was made."

A court reporter was not present at the time and there is nothing to indicate that counsel for defendant requested a court reporter to be present and to make a record of the proceedings had on December 7, 1977. There is no showing that any evidence was introduced at the hearing.

On February 6, 1978, which was long after the amended motion for new trial was overruled, Mr. Leland B. Kee, leading counsel for defendant at the trial of the case, filed an Affidavit with the District Clerk of Matagorda County, Texas. It is included in the transcript, which was filed in this Court on February 16, 1978. The affiant stated therein that the docket entry of July 28, 1977, was not made in open court, and at the hearing on defendant's amended motion for new trial, which was held December 7, 1977, he presented his handwritten motion to the judge, but that he (counsel for defendant) was not permitted to introduce evidence thereon. A supplemental transcript was filed on March 3, 1978; included therein is a "Bill of Exception" signed by the trial judge on February 27, 1978. The judge stated therein:

"On July 28, 1977, I went to Bay City, Texas, where the docket sheet was on file with the District Clerk. On that date, I announced, pronounced, rendered and made my decision and judgment in this case and recorded it on the docket sheet in open court in Bay City, Matagorda County, Texas."

The judge also said:

"This judgment was signed in open court on October 10, 1977, and counsel for both parties, including Mr. Kee, were so informed."

The "Affidavit" and the "Bill of Exception" are not properly part of the appellate record before us. We do not consider either of them in disposing of defendant's point. Even if we were to consider them, all they show is a dispute between judge and counsel as to what actually took place at the time in question. Defendant's counsel was not present in the courtroom in Matagorda County, Texas, at any time on July 28, 1977. The judge said that he (the judge) was present. Under the circumstances, we are not required to decide the issue.

■ In order to prevail, the burden was on defendant to bring this Court a proper record of the occurrences in the trial court which shows that the judgment was void. Defendant did not meet that burden. Fundamental error is not apparent on the face of the record. There is no evidence in the record that the handwritten motion was ever called to the attention of the trial judge. Nothing is presented for appellate review. See *Birge v. Toppers Menswear, Inc.,* 473 S.W.2d 79 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.); *Smith v. Davis,* 453 S.W.2d 340 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.). Point 22 is overruled.

Defendant, in point 23, contends that the trial court erred in refusing to grant its motions for continuance. Two motions were presented to the trial court during the morning of July 18, 1978, the date of trial. Both were denied. The first motion was in writing, and was sworn to by defendant's attorney. Two grounds were asserted therein. First, it was asserted that plaintiff had violated the provisions in an order made by the court on June 28, 1977, whereby plaintiff was directed to answer certain questions previously asked him on deposition; that such answers "are a sham and a farce," and are "unresponsive to the questions propounded" to plaintiff on deposition; and, consequently, defendant "cannot safely proceed to trial" until such time as plaintiff answers the questions. Second, plaintiff's first amended original petition, which was filed on July 8, 1977, alleged "an entirely new and different cause of action from that attempted to be alleged in Plaintiff's Original Petition"; as a result of the allegations made therein, "defendant cannot safely proceed to trial against these allegations without a reasonable amount of time to investigate these allegations and prepare its defenses thereto."

■ The law is well settled that the trial court's denial of a motion for a continuance is within the sound discretion of the trial court and it will be presumed, absent a showing of an abuse of discretion, that the court properly exercised its discretion.

*Hernandez v. Heldenfels,* 374 S.W.2d 196 (Tex.Sup.1963).

With respect to the first ground, plaintiff refused to answer certain questions when his deposition was taken on March 6, 1976. It was not until June 21, 1977, some 15 months later, that defendant filed a motion to compel plaintiff to answer those questions. An order to that effect, signed on June 28, 1977, directed plaintiff to do so "within ten days" from the date the order was signed. Plaintiff filed his answers on July 11, 1977. Defendant did not contest those answers by formal objections or exceptions. It did, however, allege in the motion for continuance that it could not properly prepare its defense to the action until such time that plaintiff did answer the questions. The record shows that plaintiff did answer the questions, but defendant was not satisfied by those answers.

Insofar as the second ground is concerned, defendant filed special exceptions on the day of trial to plaintiff's first amended original petition. The contentions set forth in the special exceptions were substantially the same contentions set forth in the written motion for a continuance. The court overruled all but one of them, conditioned, however, that plaintiff would, by a trial amendment, meet Special Exception No. 2, wherein it was alleged that a portion of the petition failed "to contain a concise statement of how the installation of the telephone unit interfered with the operation of the vehicle in which it was installed and thus fails to give Defendant fair notice of the claim involved." Plaintiff filed such a trial amendment. Defendant does not challenge the overruling of its special exception or the filing of the trial amendment, as such, by specific points of error directed toward the court's action. It does assert that the trial court erred in refusing to grant its motion for a continuance for the reason that permitting plaintiff to file the trial amendment effectively deprived it of time to prepare its defense to the matters raised by the amended pleading.

■ Matters of discovery are by their very nature pretrial devices designed to ex-

pedite and narrow the issues to be determined by a trial on the merits. The means of discovery should be utilized in a timely manner and should not be delayed until just before trial. Here, defendant waited 15 months after it was aware of the difficulties presented by plaintiff's refusal to answer certain questions, and did nothing to force plaintiff's hand until less than a month before the trial was scheduled to begin. The answers were filed on July 11, 1978, some seven days before the day this case was set for trial. Defendant did not challenge those answers in any way until the day of trial. We have read both the questions asked on deposition and the answers, and, in our opinion, the answers do not fall into the categories contended by defendant.

 We have compared the allegations made by plaintiff in his original petition with those made by him in his first amended original petition. We have carefully considered the exceptions leveled by defendant at the allegations made in the original petition. We do not believe that defendant was deprived of time to prepare and assert a proper defense to the matters alleged in the amended petition; the allegations therein did not set up a new cause of action but merely elaborated on the facts previously alleged. The trial amendment cured the alleged defect asserted by defendant in its Special Exception No. 2.

 The second motion was oral, and, of course, was not sworn to by either an officer of the defendant corporation, or by its attorney. Rule 251, T.R.C.P., in pertinent part, provides:

"No application for a continuance shall be . . . granted except for sufficient cause supported by affidavit . . ."

There was no compliance with the requirement set out in the rule. In that state of the record, there was no error or an abuse of discretion in denying such motion. *City of Wichita Falls v. Lipscomb,* 50 S.W.2d 867, (Tex.Civ.App.—Fort Worth 1932, writ ref'd); *Watson v. Godwin,* 425 S.W.2d 424 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.); *Smith v. Crockett Production Credit*

*Association,* 372 S.W.2d 956 (Tex.Civ.App.—Houston 1963, writ ref'd n. r. e.); *Major v. Lord,* 357 S.W.2d 820 (Tex.Civ.App.—Waco 1962, writ ref'd n. r. e.); *Coleman v. Banks,* 349 S.W.2d 737 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.); *Keelin v. Hamilton,* 430 S.W.2d 268 (Tex.Civ.App.—Dallas 1968, no writ).

We have reviewed the record in its entirety concerning the grounds asserted by defendant for a continuance. We hold that the denial of both motions did not constitute an abuse of discretion. Point 23 is overruled.

Plaintiff was involved in a one-vehicle accident at about 7:00 p. m. on July 7, 1973, while driving his 1973 Ford Ranger pickup truck down F. M. Road 457 from Sargent, Texas to Bay City, Texas. This section of F. M. Road 457 is straight, level, and paved with improved shell shoulders. It had been raining earlier during the day and the shoulders were wet. Plaintiff lost control of his truck as he was driving along the road; his truck left the paved portion of the road and eventually ended up in a bar ditch. According to him, a mobile telephone unit, which was installed in his pickup truck, came loose from its mounting, struck his right leg and caused him to lose control of the truck.

Installed in plaintiff's truck was a Motorola mobile telephone unit which had been leased by plaintiff from defendant. The entire unit was actually comprised of several component parts. First, there was a radio unit having the approximate dimensions of eleven inches by twenty-two inches by five inches, and weighing about forty pounds. Second, there was a phone unit having the approximate dimensions of eight inches by eight inches by five inches, and weighing about two pounds. Third, there were mounting brackets used to secure the phone unit to whatever surface it happened to be mounted. Fourth, there was a "universal mounting base," or "case" as it is described by the witnesses, in which the radio unit could be mounted. Finally, there were mounting brackets which could be used to support the radio unit and case if secured to an unlevel surface.

It is undisputed that the radio component of the unit and mounting base were installed lengthwise across the transmission hump of the plaintiff's truck. The phone component was in turn mounted on top of the radio. Apparently, mounting brackets were used to support the mounting base and radio unit.

The unit was installed for plaintiff by Mr. Alva Springer, an employee of the defendant, on October 13, 1972. Springer was, at the time, in charge of installing mobile phone units for defendant in Bay City. The actual unit itself was not introduced into evidence. It was, at defendant's request, removed by Springer after the accident while plaintiff's truck was parked at the local Ford Company lot.

■■■ Defendant, in points 5, 7, 9, 11, 13 and 15, contends that there was no evidence to support the trial court's findings of fact regarding negligent or defective installation of the unit, and also challenged the findings in points 6, 8, 10, 12, 14 and 16 as against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In reviewing the "no evidence" points we consider the evidence in its most favorable light in support of the findings; we consider only the evidence and the inferences which support the finding, and reject the evidence and the inferences which are contrary thereto. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup.1965). In reviewing the "against the great weight and preponderance of the evidence" points, we consider and weigh all of the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

In summary, the trial court found that the unit was improperly installed (mounted on the transmission hump with brackets instead of under the seat or on a flat surface where all four corners of the base could be securely attached to the truck); that the improper installation was negligence and a proximate cause of the accident, which rendered the product defective and in an unreasonably dangerous condition, which was a producing cause of the accident.

■■■ In an installation case, the test for negligence is, of course, simply whether the supplier of the goods exercised due care when it installed the items. The test for defect is whether some feature of the installation, i. e., either the materials used or the manner of installation itself, threatened harm to persons using the item to the extent that any such item so installed would not be placed in the channels of commerce by a product supplier aware of the risks or to the extent that the item would not meet the reasonable expectations of the ordinary consumer or user as to its safety. *Miller v. Bock Laundry Machine Co.,* 568 S.W.2d 648 (Tex.Sup.1978); *General Motors Corp. v. Hopkins,* 548 S.W.2d 344 (Tex.Sup.1977); *Henderson v. Ford Motor Company,* 519 S.W.2d 87 (Tex.Sup.1974).

Apart from the manner of installation of the unit, and regarding the circumstances of the accident itself, plaintiff testified that the radio unit came loose while he was driving down the highway, fell over onto his leg, and caused him to lose control of his truck. Prior to the unit coming loose, he had not hit any bumps or holes. He was looking straight ahead and the road was straight and smooth. He also said that the unit had become "loose" for an unspecified period of time prior to the accident.

Springer, defendant's expert witness, at the time of trial did not have an independent recollection of the specific manner in which he installed the unit. He did testify, however, that he had to "more or less shoot from the hip" in deciding how to install the unit. His only guideline in this regard was an instruction booklet published by Motorola, the manufacturer of the unit. While this booklet, which was admitted into evidence without objection, provides a rather detailed description of how to install a mobile phone unit in an automobile, it does not contain any instructions regarding installation thereof in a pickup truck. It does state, however, that the radio set (and mounting base, if used) must be secured in a flat level position to prevent warping or twisting. If no suitable surface is present, the larger space washers (supplied in the

mounting kit) were to be used in order to keep the base level.

According to Springer, the standard mounting procedure followed in installing a mobile phone was to first determine where the unit should go; and, when so determined, the unit should go on the flattest surface available. The mounting case is secured to the surface by screws at all four corners, unless brackets are required. Use of brackets is not the preferred method because it does not secure the unit flat on the transmission hump. The radio unit is placed inside the case by opening the lid, placing the unit down into the case and sliding the unit into place. The phone unit can be mounted in any number of places including the dash, or, on the case itself.

Springer further testified that he mounted the unit on the transmission hump because there was no other place to put it. He also said that the unit could not be installed behind the seat because of the gas tank, and that the unit could not be placed under the seat because there was not sufficient room. He further stated that it could not be placed on the floorboard on the passenger side because the floor was uneven in some respects. The only other option would have been to place the unit outside the cab in a weatherproof box, which would have increased the cost to the user. Springer did not remember whether the plaintiff was ever offered this option.

Springer's testimony was supported by that of Mr. Danny Mitchell, who was in the business of selling and installing mobile phone units in automobiles and trucks. He did some work for the defendant on an independent contractor basis. He testified that the only place one could install a mobile phone unit like that involved in this case was on the transmission hump. Neither Springer nor Mitchell testified that either had actually tried sliding the same type of unit under the seat of a truck similar to the truck owned by plaintiff.

Some photographs were taken of the inside of plaintiff's truck after the accident. The identity of the person who took them and the exact date that they were taken were not established. The photographs show a mobile telephone unit on the driver's side of the cab sitting ajar of the transmission hump. Mr. Kenneth Garcia stated that the photographs, which were duly authenticated and introduced into evidence, accurately reflected what he saw when he inspected plaintiff's truck after the accident.

Mr. John Wofford, Jr., an expert witness for plaintiff, testified that the unit should have been installed partially under the seat of the truck, on the passenger side of plaintiff's truck. He further testified that he never allowed any of his employees to mount mobile phone units on the transmission hump of a truck because of the serious risk of harm to the driver. According to him, mounting the unit under the seat would be no more expensive than mounting it on the hump, and perhaps quicker as well. He also testified that he would not have used brackets like the one pictured in the photographs of the inside of plaintiff's truck because of the risk that they would not adequately secure the unit.

Regarding the mounting of the unit lengthwise across the hump rather than parallel to the hump, all the witnesses apparently agreed that the unit would not fit if it were placed parallel to the hump. At least four and one-half inches of clearance in the front and 6 inches clearance in the back were required. Therefore, if the unit was mounted on the hump at all, it would have to be done so crosswise, thus necessitating the use of brackets to support one end above the floorboard.

Springer also testified that hump mounting with brackets was not the preferred way to install mobile phones because of the risk of the unit loosening up and interfering with the driver. The preferred manner of installation was to mount the radio unit and base on a perfectly flat surface with all four corners securely fastened. Springer and Mitchell both said that they would use self-tapping screws to fasten the unit to the surface. Such screws came with the unit. Wofford stated that he would use nuts and bolts. The undisputed dimensions of the

radio unit were eleven inches by twenty-two inches by five inches, and weighed approximately forty pounds. Wofford, however, identified the unit shown in the pictures as eleven inches by twenty-two inches by three inches, which weighed approximately twenty-five pounds.

The defendant contends that Wofford's testimony is "no evidence" because it was based largely on photographs from which no reasonable factual information can be gleaned and because he described the unit he was testifying about as being two inches lower and fifteen pounds lighter than what the evidence conclusively shows. We do not agree. Wofford testified to other facts as well. Viewing the evidence most favorably to plaintiff, however, we think that the defendant's arguments go more to the weight of the evidence rather than to its legal sufficiency.

Wofford had been in the business of installing mobile phones for twenty-five years. He had worked with Motorola units before, and was familiar with proper installation practices. We cannot say that it would have been impossible for him to identify the particular unit he was supposed to be testifying about from the photographs introduced into evidence. While the photographs are somewhat fuzzy, they do provide a fairly clear picture of the unit itself. We therefore find that the photographs constituted some evidence in this case of improper installation of the unit.

After considering only the evidence and the inferences tending to support the challenged findings, and after disregarding all evidence and inferences to the contrary, as we must do under the rule announced in *Garza v. Alviar, supra,* we hold that the testimony of plaintiff, and of Wofford, along with the photographs above mentioned, constitute sufficient evidence which supports those findings. Accordingly, points 5, 7, 9, 11, 13 and 15, defendant's "no evidence" points, are overruled.

We next consider the "against the great weight and preponderance of the evidence" points relating to the findings that the mobile telephone unit was improperly install-ed. Such evidence has already been set out in our discussion of the "no evidence" points. Concerning whether or not defendant was negligent in the manner in which the unit was installed, or whether or not it was defectively installed, there is a clear conflict in the evidence.

It is within the sole province of the trier of fact, who had the opportunity to observe the demeanor of the witnesses on the stand, to judge their credibility and the weight to be given their testimony, to resolve conflicts in the testimony of one witness with that of another, and to believe part of a witness' testimony and to disregard other portions thereof. *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224 (Tex.Civ.App.—San Antonio 1951, writ ref'd); *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.).

After carefully considering and weighing all of the evidence relating to the trial court's findings that the accident was proximately caused by defendant's negligent and defective installation of the unit, we hold that such findings are not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Points 6, 8, 10, 12, 14 and 16 are overruled.

Defendant, in point 17, asserts that the trial court erred in admitting into evidence, over objection, Wofford's testimony to the effect that mounting the unit on the transmission hump of plaintiff's truck would be unreasonably dangerous, since "no predicate was laid as to the manner in which the unit was installed, or as to the specifications of the materials used," and Wofford had no personal knowledge of the interior of the cab of plaintiff's truck, or the manner in which the unit was installed therein, or of the specifications of the materials used. We do not agree. The admission of such testimony, under all of the evidence presented by the record, did not constitute reversible error. Point 17 is overruled.

We cannot consider defendant's points that the trial court erred in awarding judgment because plaintiff assumed the risk of injury by continuing to operate his truck after he knew that the unit was "loose," and that the trial court erred in rendering judgment because the amount was in excess of the amount allowable under applicable federal tariffs those defenses were not affirmatively pled by defendant in its amended original answer, its live pleading, and a trial amendment was not requested by defendant. See Rule 94, T.R. C.P. The issues were not tried by consent. Points 18 and 21 are overruled.

Regarding contributory negligence as a defense to plaintiff's action, defendant has brought forward three points of error. First, it attacks the judgment of the trial court on the ground that the plaintiff's operation of his truck while under the influence of alcohol was established as a matter of law (Point 1). Second, it contends that the trial court's finding that plaintiff was not inebriated is against the great weight and preponderance of the evidence (Point 2). Third, it asserts that the trial court erred in failing to find that the accident was caused by plaintiff's negligence in operating his vehicle at a higher rate of speed than it would have been operated by a person of ordinary prudence, acting under the same or similar circumstances (Point 4). Closely related to the contributory negligence points is point 3, wherein it is claimed that the trial court erred in failing to admit into evidence the testimony of Officer Wilson, who investigated the accident, as to conversations he had with a bystander at the scene of the accident, who described to Wilson certain movements of plaintiff's truck on the road preceding the accident. None of the points have merit.

To briefly summarize the evidence relevant to the issue of the plaintiff's alleged contributory negligence, we begin with his own testimony on cross examination by counsel for defendant. On cross examination, plaintiff testified that he was neither speeding, nor had he been drinking at the time the accident occurred. He said that he was traveling 50 m. p. h. at the time of the

accident. The accident occurred on a stretch of highway which was within a 70 m. p. h. zone, the then legal speed limit.

The only other testimony offered by defendant that is relevant to the issue of contributory negligence was that of Officer Wilson. On direct examination, Wilson testified that when he arrived on the scene he found the plaintiff unconscious inside the pickup truck. While attempting to ascertain whether the plaintiff was breathing, he smelled the odor of intoxicating liquor on the plaintiff's breath. He also noticed a broken whisky bottle and several empty beer cans in the truck. No blood or breathalyzer tests were performed. Wilson did not observe plaintiff walk, talk, drive, or otherwise move.

Wilson did not see plaintiff on July 7, 1973, until he arrived at the scene after the accident had occurred. He said on direct examination that plaintiff's truck was traveling at a "high rate of speed" at the time of the accident. He defined "high rate of speed" as anything exceeding the speed limit; but on cross examination, however, he admitted that the rate of speed in this case was just a guess on his part. He further stated that he could not swear that plaintiff was intoxicated at the time and place in question. He also admitted on cross examination that he could only guess at the distance traveled by plaintiff's truck after it left the road.

In addition to his own sense impressions, Wilson was also asked to testify as to certain statements allegedly made to him while investigating the accident by an unidentified motorist who claimed he had been following and observing plaintiff. The trial court sustained plaintiff's objections to this testimony, but allowed the defendant to offer it as a bill of exception. According to Wilson, he was approached by an unidentified motorist about 45 minutes after he arrived on the scene. The motorist allegedly told Wilson that he had been driving behind the plaintiff a few miles up the road and had observed him go off the road several times. The motorist also allegedly told

Wilson that he had wondered to himself at the time whether the plaintiff would ever make it to Bay City.

According to Wilson, he had already formulated the opinion that the plaintiff had been speeding while intoxicated before being approached by the unidentified witness. To use Wilson's own terminology, the statements by the motorist merely "cemented" his opinion.

Taking up defendant's point of error regarding the admissibility of the excluded statements by the motorist, defendant bases its argument for admissibility on grounds of *res gestae.*

 It has been said that res gestae evidence is not the witness speaking but the transaction voicing itself. *Knapik v. Edison Bros., Inc.,* 313 S.W.2d 335 (Tex.Civ.App.— Waco 1958, writ ref'd). Moreover, while the trial court has considerable discretion regarding the admissibility of statements offered as res gestae, we must still review the question of admissibility as we would any other question of law. *Truck Insurance Exchange v. Michling,* 364 S.W.2d 172 (Tex.Sup.1963).

 We hold that the unidentified motorist's statements were not admissible, and that the trial judge did not abuse his discretion in refusing to admit them. To be admissible as *res gestae,* the statements must be shown to have been a spontaneous reaction to an exciting event. *Hartford Accident & Indemnity Company v. Hale,* 400 S.W.2d 310 (Tex.Sup.1966). The circumstances must be such as to create a reasonable presumption that the statements were the spontaneous utterance of thought created by or out of the occurrence itself. *Truck, supra.* Here, we have an unidentified witness approaching an investigating officer at least 45 minutes after the officer arrived on the scene. The witness did not observe the accident itself, but merely observed plaintiff driving the truck a few miles before the accident occurred. Most importantly, the motorist's statements to Wilson were not uttered at the time of the exciting event (the alleged movement off

and on the road by the plaintiff), but rather at a later time (the arrival by Wilson at the scene). We cannot say that the statements represented a spontaneous reaction to an exciting event.

Defendant cites us to two Texas cases which it claims are in point. However, both *Houston Oxygen Co. v. Davis,* 139 Tex. 1, 161 S.W.2d 474 (1942) and *Claybrook v. Acreman,* 373 S.W.2d 287 (Tex.Civ.App.— Beaumont 1963, writ ref'd, n. r. e.), relied upon by defendant, involved statements made by the declarants to the testifying witness at the time of the exciting event. In the case at bar, we have statements allegedly made almost an hour after the accident. We do not think that such statements are sufficiently spontaneous to save them from the suspicion of being either manufactured or unreliable evidence.

 Under the record before us, we do not think that either drunken driving or speeding were proved as a matter of law, nor was the trial court's failure to find that the accident was proximately caused by the negligence of plaintiff in operating his truck while under the influence of intoxicating liquor against the great weight and preponderance of the evidence. The evidence is simply too meager to compel such a result. Furthermore, we think the same result would apply even if we considered the excluded statements by the motorist. Wilson admitted that his opinions were mere guesswork and we believe there are simply too many possible explanations for the presence of an odor of liquor in the truck. Even if plaintiff had been drinking, there is absolutely no evidence that he was legally drunk. Points 1, 2, 3 and 4 are overruled.

By its point 19, defendant contends that misuse of the unit was proved as a matter of law, which precluded the rendition of judgment in plaintiff's favor. In point 20, it is asserted that the trial court erred in entering judgment for plaintiff based upon the finding that plaintiff did not misuse the unit by deciding not to request and obtain service for an alleged defect of which plaintiff was aware, for the reason that such

finding is against the great weight and preponderance of the evidence.

■ The defense of misuse in strict liability actions was recently clarified by the Supreme Court in *General Motors Corp. v. Hopkins,* 548 S.W.2d 344 (Tex.Sup.1977). In *Hopkins,* the court held that "if the product is found to have been unreasonably dangerous when the defendant placed it in the stream of commerce, and if that defect is found to have been a producing cause of the damaging event, and if the plaintiff has misused the product . . . and if that misuse is a proximate cause of the damaging event, the trier of fact must then determine the respective percentages . . . by which these two concurring causes contributed to bring about the event." 548 S.W.2d at 352. Additionally, the Supreme Court held in *Hopkins* that for misuse to be a defense, it must have been unforeseeable to the defendant. Thus, after *Hopkins,* we can break the defense of misuse down into two primary elements: 1) an unforeseeable misuse, which 2) was a proximate cause of the plaintiff's accident.

■ In the case at bar, defendant urges two theories of misuse. First, it argues that plaintiff misused the mobile phone by operating his pickup truck at high speeds while under the influence of liquor. That is not a misuse, however, of the mobile phone, but rather of the truck. Second, defendant contends that while the plaintiff knew that the mobile phone was loose for sometime, he never reported that fact to the defendant, nor did he ever attempt in any way to have the situation remedied. Further, defendant claims that the plaintiff's failure in this regard was in violation of his agreement with the defendant respecting the servicing of the unit after its installation.

■ We agree that misuse can consist of the failure to heed instructions, *McDevitt v. Standard Oil Company of Texas,* 391 F.2d 364, 365 (5th Cir. 1968) (failure to follow manufacturer's instructions for the size and pressure); *Procter & Gamble Manufacturing Co. v. Langley,* 422 S.W.2d 773, 778 (Tex.Civ.App.—Dallas 1967, writ dism'd)

(failure to perform test before applying permanent wave solution, or the failure to properly maintain and service a product); *Mitchell v. Ford Motor Co.,* 533 F.2d 19 (1st Cir. 1976) (failure to adjust and maintain brakes on a dump truck). *See generally Sales & Perdue, The Law of Strict Tort Liability in Texas,* 14 *Hous.L.Rev.* 1, 78–84 (1976–77). We do not feel, however, that defendant has established either type of conduct on the part of plaintiff in such a way as to bring it within the scope of the misuse defense outlined by the Supreme Court in *Hopkins, supra.*

■ While there is evidence in the record on an instruction booklet issued to the plaintiff at the time the mobile phone unit was installed, there is no evidence of the contents of such booklet. The booklet was attached to an answer by the defendant to one of plaintiff's interrogatories. The answer was then read into the record by plaintiff. However, the booklet itself was never offered into evidence. The duty of this Court is to consider only the evidence tendered or admitted at the time of trial. *Gulf Oil Corp. v. Southland Royalty Co.,* 478 S.W.2d 583 (Tex.Civ.App.—El Paso 1972), aff'd 496 S.W.2d 547 (Tex.Sup.1973).

■ The relevant evidence in this case is contained in the testimony of the plaintiff as well as that of Kenneth Garcia. Mr. Garcia testified that he had borrowed the plaintiff's truck before the accident and that the mobile phone appeared secure on the floorboard. The plaintiff, on the other hand, admitted that the unit had been wobbling before the occurrence of the accident; that he thought he should have done something about it, but that he never reported the situation or attempted to have it fixed.

Accepting the fact that the unit wobbled and that the plaintiff knew this, we cannot say that plaintiff's action amounted to misuse as a matter of law. First, defendant did not establish how badly the unit was wobbling before the day of the accident. The trier of fact was thus unable to determine whether plaintiff's conduct amounted to an unintended or abnormal use of the mobile phone. Second, even if plaintiff's

actions amounted to a misuse in the sense of an abnormal or unintended use, we do not believe that it was established in the trial court that this misuse was unforeseeable to the defendant. *Hopkins, supra.* Weighing all the evidence, we hold that the failure to find misuse of the unit by plaintiff was not against the great weight and preponderance of the evidence.

For the reasons stated, defendant's points to the effect that the trial court erred in failing to find that plaintiff was guilty of contributory negligence and misuse of the unit, each of which was a producing cause of the accident and which proximately caused the accident cannot be sustained. Points 19 and 20 are overruled.

The judgment of the trial court is AFFIRMED.