**BUFFALO SAVINGS & LOAN ASSOCIATION, Appellant,**

v.

**TRUMIX CONCRETE COMPANY, Appellee.**

No. 2379cv.

Court of Appeals of Texas, Corpus Christi.

Sept. 9, 1982.

Charles J. Michael, Houston, for appellant.

Gerald P. Burleson, Houston, for appellee.

Before BISSETT, UTTER and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is a suit based on an instrument purporting to be a letter of guaranty brought by appellee Trumix Concrete Company (hereinafter "Trumix") against T.W.A. Builders, Inc. ("TWA"), its president James C. Tremain, Jr., and Buffalo Savings and Loan Association ("Buffalo"). Only Trumix and Buffalo are parties to this appeal.

Trumix is in the business of supplying concrete, and was doing so for three homes being constructed by TWA for which Buffalo was providing the interim financing. Trumix poured the slabs for the three structures (which will hereinafter from time to

time be referred to individually as "the Oak Arbor house," "the Country Club house," and "the Charleston North house"), for which no payment had been made when TWA requested that Trumix return to pour the driveways, sidewalks, and patios. Trumix was reluctant to do so, at which point Mr. A.T. Poovey, the Vice President of Trumix, contacted Buffalo by telephone and spoke with Ms. Shirley Dyer, an Assistant Vice President who worked with construction loans. This conversation took place on June 13, 1977.

Mr. Poovey's and Ms. Dyer's recollections of their conversation differed somewhat. Each agreed that the main topic was Mr. Poovey's desire that written assurances of forthcoming payments be made by Buffalo before further deliveries of concrete were resumed. Mr. Poovey distinctly recalled the conversation as including a discussion of payment by Buffalo for concrete already delivered, i.e., the slabs, as well as for future deliveries. He testified that, as he understood their telephone agreement, Ms. Dyer gave assurances as to both. Ms. Dyer testified that Mr. Poovey could have told her that he wanted Buffalo to pay TWA's pre-existing debts as well as those to be incurred by future deliveries.

Ms. Dyer testified that she then went to see her superior, Mr. Robert Dunham, Vice President of Buffalo. It was her recollection that Mr. Dunham, after being told of Mr. Poovey's request, authorized her to send a letter to Trumix. Mr. Dunham did not recall Ms. Dyer ever coming to see him about the matter, nor authorizing her to send the letter. He stated that he would not have had the authority to do so. While Ms. Dyer knew of no other similar letters having been issued during her tenure at Buffalo, she was under the impression that Mr. Dunham was authorized to send one. At her direction, the following was sent to Trumix.

"June 13, 1977

Tru-Mix Concrete
Att: Tom Poovey

       Re: 7003 Oak Arbor
         ' 1730 Country Club
         27 Charleston North

Dear Sir:

This letter is to confirm that Buffalo Savings and Loan is doing the interim financing on the above mentioned properties in the name of T.W.A. Builders, Inc., and that we will pay the invoices on the above properties.

If you need any further information, please do not hesitate to contact me.

       Very truly yours,
       Shirley Dyer
       Ass't Vice President"

Prior to receiving the above, Mr. Poovey sent the following to Ms. Dyer:

"June 17, 1977

Shirley Dyer, Asst. Vice President
Buffalo Savings and Loan Association
P.O. Box 26897
Houston, Texas 77207

Gentlemen:

As we discussed in a telephone conversation today we are enclosing herewith copies of materialmen's liens filed on TWA Builders project at 27 North Charleston and 1730 Country Club both in Sugar Creek subdivision as well as a copy of our Invoice # 27246 covering concrete delivered to 7003 Oak Arbor, also in Sugar Creek.

It is our understanding that you are going to provide us with payment on these three (3) items as well as concrete yet to be poured at these three locations for the sidewalks, driveways, patios, etc. Invoices covereing future deliveries will be bill [sic] to TWA Builders but mailed to you for your handling and your payment. We want to thank you, Shirley, for your cooperation in this matter.

Yours very truly,
A.T. Poovey
Vice President-Credit Mgr."

The evidence showed that Buffalo paid the invoice submitted by Trumix for concrete deliveries made subsequent to June 13, 1977, the date of the Buffalo letter. Mr. Poovey's testimony that Buffalo also paid Trumix' Invoice No. 27246, which was submitted with his letter of June 17th, for

concrete delivered to the Oak Arbor house prior to June 13th, went uncontradicted. This suit was brought for payment for the concrete delivered to the Charleston North and Country Club houses prior to the June 13th letter, it being Trumix' contention that the instrument purports to guarantee payment for such.

The trial court entered judgment for Trumix for the amount claimed, plus attorney's fees, and filed findings of fact and conclusions of law. In its first six points of error Buffalo contends that there is no evidence and, alternatively, insufficient evidence to support the trial court's findings of fact regarding Ms. Dyer's and Mr. Dunham's authority to bind Buffalo to pay Trumix invoices, and Mr. Dunham's instruction to Ms. Dyer to send the letter of assurance to Trumix. In determining the merit of appellant's no evidence points we consider only the evidence and inferences tending to support the trial court's findings and disregard any contrary evidence and inferences. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Bodine v. Welders Equipment Co.,* 520 S.W.2d 407, 411 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). In reviewing the contentions that the evidence is factually insufficient to support the findings of the lower court, we will review all of the evidence and set the verdict aside if it is manifestly unjust. *In re Kings Estate,* 150 Tex. 622, 244 S.W.2d 660, 661 (1952); *Bodine v. Welders Equipment Co.,* supra.

Assuming arguendo that neither Mr. Dunham nor Ms. Dyer had either the actual or apparent authority to issue the letter of assurance and thereby bind their principal, Buffalo, we still believe that the trial court's findings are supported by the theory of ratification. That is defined as the adoption by a principal of the benefits of, as well as the liability involved in, an act done by an agent on the principal's behalf, but without the principal's authorization. 3 Tex.Jur.3d *Agency,* § 88, p. 138. It is assumed that the acts in question of the agent were unauthorized at the time performed. Id. at p. 139. The ratification by the princi-

pal may be express or, as in the case here, implied from the principal's subsequent course of conduct. Id.

Buffalo admittedly paid all invoices submitted by Trumix for concrete delivered after June 13th, as Ms. Dyer's letter said it would. Buffalo did not deny Mr. Poovey's testimony that Trumix had also received payment from Buffalo for the concrete delivered to the Oak Arbor house prior to the letter, the invoice for which he submitted with his letter to Buffalo of June 17th, in accordance with his interpretation of his agreement with Ms. Dyer. These acts on the part of Buffalo were clearly consistent with the assurances made by Ms. Dyer, and constitute a ratification of her acts. Such is equivalent to prior authority, and operates retroactively, relating back to the inception of the transaction. 3 Tex.Jur.3d *Agency,* § 93, p. 146. Buffalo's points of error numbers one through four are overruled.

In response to Buffalo's contentions concerning the trial court's finding as fact that Ms. Dyer communicated Mr. Poovey's request to Mr. Dunham, and that Mr. Dunham authorized her to send the letter, we refer to the testimony of those two individuals, recited supra. In short, the trial court opted to accept Ms. Dyer's recollection instead of Mr. Dunham's. As the fact finder, of course, the trial court is the judge of the credibility of the witnesses and the weight to be accorded their testimony. *National Resort Communities, Inc. v. Holleman,* 594 S.W.2d 195, 197 (Tex.Civ.App.— Austin 1980, writ ref'd n.r.e.); *Southwestern Bell Telephone Co. v. Griffith,* 575 S.W.2d 92, 101 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). It was within the province of the trial court, therefore, to believe or disbelieve any portion or portions of any witness' testimony. *Griffith,* supra. Points of error five and six are overruled.

In its seventh and eighth points of error Buffalo again asserts, respectively, legal and factual insufficiency of the evidence points regarding the trial court's

finding of fact that the June 13th letter was intended to cover indebtedness which preceded the date of the letter as well as future indebtedness. Contracts of guaranty are to be construed in favor of the guarantor, and may not be extended beyond their precise terms. *McKnight v. Virginia. Mirror Corp.,* 463 S.W.2d 428, 430 (Tex. 1971). However, the real intentions of the parties are to be ascertained and given full effect. *Southwest Savings Association v. Dunagan,* 392 S.W.2d 761, 767 (Tex.Civ.App. —Dallas 1965, writ ref'd n.r.e.).

■ As a general rule, guaranty contracts refer only to future indebtedness where the language thereof does not refer to past indebtedness and no testimony is offered to show that the contract covered it. *Thomson v. Collins,* 267 S.W. 516, 517 (Tex. Civ.App.—Waco 1925, no writ). In the instant case Ms. Dyer testified that she did not intend her letter to assure the payment of already extant debts. However, she did not deny Mr. Poovey's assertion that they discussed those debts on the phone prior to the sending of her letter.

■ What we find more persuasive, however, is Buffalo's undertaking to pay the invoice for the concrete already delivered to the Oak Arbor house when it was submitted by Trumix. Buffalo concedes that the letter in question is ambiguous. That being the case, we look to the construction given the contract by the parties themselves. *Falls Rubber Co. v. LaFon,* 256 S.W. 577, 581 (Tex.Comm'n.App.1923, judgment adopted). The aforementioned act of payment clearly indicates an intention to guarantee existing debts as well as those to arise in the future. These two points of error are overruled.

■ Points of error nine, ten, eleven, twelve, thirteen, and fourteen raise legal and factual insufficiency points concerning the following findings of fact of the trial court: that Trumix poured more concrete at all three houses in reliance upon the letter in the belief that such evidenced Buffalo's commitment to pay pre-existing as well as future debts; that Trumix refused to deliver more concrete without Buffalo's assurance that all of the concrete would be paid for; and that Mr. Poovey advised Ms. Dyer that Trumix would require such assurance in writing. Buffalo has not briefed these points of error. However, the evidence recited thus far is clearly sufficient to support the trial court's findings. Points nine through fourteen are overruled.

■ Complaint is next made that no consideration exists to support the issuance of the letter. We refer back to our sustaining of the trial court's finding that Trumix acted in reliance upon Buffalo's assurance in delivering more concrete. It is axiomatic, of course, that such constitutes adequate consideration. 14 Tex.Jur.3d *Contracts,* § 102, p. 169. The point is overruled.

■ Points of error sixteen and seventeen attack the sufficiency of the evidence to support the trial court's finding that Ms. Dyer instructed her secretary to prepare a letter to Trumix contained the written assurances demanded by Mr. Poovey. Ms. Dyer testified that she instructed her secretary to compose the letter and to sign her (Dyer's) name to it. The points are without merit. So too is Buffalo's eighteenth point of error in which it asserts the legal insufficiency of the evidence to support the finding that Ms. Dyer signed the letter. Ms. Dyer stated that her secretary signing the letter with her (Dyer's) name based upon her instructions to do so had the same effect as if she had signed it herself. These three points of error are overruled.

The trial court found that the subsequent deliveries to the three houses enhanced their values. In its nineteenth and twentieth points of error Buffalo questions the sufficiency of the evidence to support this finding. In doing so, however, it misstates the trial court's finding. Additionally, it concedes, (as it does with the three previous points of error) that the finding is not essential to the judgment. We agree, and overrule these two points of error.

As previously noted, there were originally three defendants in this action. Summary judgment was entered against defendants

TWA and its president, Mr. Tremain. In testifying on the subject of attorney's fees, Trumix' attorney, Gerald Burleson, testified that he devoted approximately eighteen hours to the case, including the portion involving the other two defendants; that his normal fee was $100 per hour; and that $1,839 was a reasonable fee. Richard Abrams, another Harris County attorney, also testified that that figure was reasonable for the prosecution of this type case if eighteen or more hours of the attorney's time is invested.

Buffalo's twenty-first and twenty-second points of error attack the sufficiency of the evidence to support the trial court's award of $1,000 as attorney's fees. The awarding of such is a matter within the sound discretion of the trial court, and its judgment in this regard will not be upset absent a clear showing of abuse of that discretion. *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 828 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In reviewing the question, we have examined the record and have drawn on our own knowledge as lawyers and judges in light of the testimony and the amount in controversy, and find no such abuse. Id. Points number twenty-one and twenty-two are overruled.

Finally, in its supplemental points of error, Buffalo raises sufficiency points concerning the trial court's finding that it paid for the slab poured at the Oak Arbor house. Mr. Poovey identified Invoice No. 27246, sent to Buffalo, as pertaining to concrete delivered to the Oak Arbor house prior to June 13th, and testified that the only concrete poured by Trumix prior to that date was the slab. Such testimony clearly supports the trial court's finding. Buffalo's twenty-third and twenty-fourth points of error are overruled, and the judgment of the trial court is

AFFIRMED.